Whether or not his opinion was correct was another matter.

Relators applied by supplemental petition for a writ of certiorari. We have several times declared that the supervisory jurisdiction of this court, under article 101 of the Constitution of 1898, extended over criminal as well as civil courts, but in the case of State ex rel. Satcho v. Judge, 49 La. Ann. 231, 29 South. 690, we announced limitations upon the exercise of that power.

The supervisory authority conferred upon us ·by the Constitution is very broad, and we would exercise it promptly in order to prevent a very evident and exceptional denial of justice; but we do not think that this case presents anything calling for unusual action.

It is a complaint made, after parties have been tried upon a specific criminal charge (which the district attorney was authorized to have filed by information) by a petit jury and found guilty by that body, that the grand jury which presented the charge had not, in point of fact, done so.

When matters have gone so far, the finding of the grand jury, as the basis of the accusation, has no special weight.

After full consideration of the case, we have reached the conclusion that relators have made no such showing as would justify an interposition on our part in their favor.

·For the reasons assigned, it is hereby adjudged and decreed that the orders hereinbefore issued be set aside, and that relators' application herein be dismissed, at their costs.

---

(40 South. 794.)

No. 15,763.

MEYER et al. v. MEYER BROS., Limited, et al.

(March 26, 1906.)

1. PARTNERSHIP—RECEIVER—APPOINTMENT.

Whether a receiver should be appointed gave rise to the issues involved.

2. SAME—APPLICATION.

Under the district court's discretion, directing plaintiffs to elect as to which of two demands plaintiffs would proceed with, they elected to prosecute the suit for the appointment of . a receiver.

3. SAME—PROSPEROUS AND EXTENSIVE BUSINESS.

The business of the parties which plaintiffs ask to place in the hands of a receiver, and which the defendants oppose, is prosperous and large.

4. SAME—GROUNDS.

The charges made by plaintiffs are not sufficiently borne out by the facts to justify a judgment authorizing the appointment of a receiver.

5. SAME—NECESSITY.

The necessity for the appointment is not apparent. The rights of parties are not threatened with loss.

6. SAME—ACCOUNTING.

The right is reserved to plaintiffs to sue for a settlement and accounting.

(Syllabus by the Court.)

Appeal from Sixth Judicial District Court, Parish of Ouachita; Luther Egbert Hall, Judge.

Action by Annie R. Meyer and Sol Meyer, Jr. against Meyer Bros., Limited, and Sol Meyer, Sr. Application for receiver was denied, and plaintiffs appeal. Affirmed.

Albert H. Leonard and E. Tyler Lamkin, for appellants. Hudson, Potts & Bernstein, for appellees.

BREAUX, C. J. Under the order of the district court the action was limited to a suit for the appointment of a receiver to manage and liquidate the business of Meyer Bros., Limited.

Plaintiffs originally sued for the appointment of a receiver, and asked that, in the event the court should conclude that Meyer Bro., Limited, is not a corporation, then that the property be judicially sequestered and the business liquidated through the court's action.

The order of the court compelling the defendant to elect had the effect of limiting the demand to the appointment of a receiver.

Meyer Bros., Limited, is a commercial firm, large, successful, and prosperous. The firm originally consisted of three brothers Herman, Sigmund, and Solomon, Sr. The latter only survives, and is sued by his sister-in-law, the widow of Herman Meyer, who with Sol Meyer, Jr., are the testamentary executors of the last will and testament of the late Herman Meyer.

After the death of Sigmund in 1895, Herman and Sol, Sr., became the owners of the interest which Sigmund left at his death, and they continued the business under the same firm name.

In 1901, they (Herman and Solomon) agreed to form a joint-stock company, limited. They, with other incorporators, whose interest was comparatively limited, signed a charter of incorporation known as "Meyer Bros., Limited." The capital stock was fixed at $250,000.

The original subscription list, forming part of the charter, shows the amount of shares subscribed.

Plaintiffs' main contention is that Meyer Bros. did not transfer the property that they were to transfer to the corporation and that no stock certificates were issued at the time.

The stock was, none the less, subscribed for in full.

Herman Meyer died on the 17th day of March, 1904.

Plaintiffs allege, in substance, that after the death of Herman Meyer, A. A. Goldschmidt, the bookkeeper of Meyer Bros., with Solomon Meyer, Sr., in order to defraud the estate of Herman Meyer, made a sale from Meyer Bros. to Meyer Bros., Limited, and shortly thereafter followed the sale with an entry on the books of the firm of Meyer Bros., Limited, in order to make it appear that Meyer Bros. had transferred, in accordance with their understanding, their stock to Meyer Bros., Limited. The asserted false entry reads as follows:

"*February 29, 1904. The transfer to Meyer Bros., Limited,* having *now been effected,* the following entries are made:

| | | |
|---|---|---|
| Solomon Meyer has interest, May 1, 1901 | | $ 57,186 93 |
| Herman Meyer has interest, May 1, 1901 | | 81,933 43 |
| Reserve account...... $41,587 19 | | |
| Adjusted ............ 200 79 | | |
| | | 41,787 98 |
| | | $180,908 34 |
| Good Will..................... | | 29,991 66 |
| Total ..................... | | $210,900 00 |

"For which Meyer Bros. received 2,109 shares, equal to $210,900."

Plaintiffs further charge that, still conspiring to defraud the heirs of Herman Meyer, Goldschmidt and Solomon Meyer, Sr., falsely executed as of date February 29, 1904, certificates of stock in Meyer Bros., Limited, as follows:

| | |
|---|---|
| Solomon Meyer | 1,055 shares |
| Herman Meyer | 1,054 shares |
| A. A. Goldschmidt | 100 shares |
| M. Hoffman | 50 shares |
| Alfred Feibleman | 20 shares |
| H. P. Marks | 75 shares |
| Fred Levi | 50 shares |
| W. B. Fox | 10 shares |
| James Meyer | 1 share |
| Leaving not issued | 85 shares |
| | 2,500 shares |

It is charged that the certificates of stock were not issued by the secretary of the company in February, 1904, but were executed and issued after the death of Herman Meyer.

Plaintiffs aver the additional ground that the business was profitable before the death of Herman Meyer, but since his death it is unprofitable and unsatisfactory—results, it is urged by plaintiffs, brought about by the large and unjustifiable increase of the salaries paid to officers and employés, and by the false and fraudulent entries made May 29, 1903, on the books for the purpose of defrauding the estate. Plaintiffs specially point to a misleading entry of $22,500 made to wrong them. Plaintiffs aver that the entry is untrue, for the reason that no note was executed at the time; that Herman Meyer paid the draft for said amount; that the attempt was, on the part of defendant, to keep the matter secret in order to appropriate the amount. We will hereafter, in our decision, specially take up this charge.

Fraud, mismanagement, and usurpation are laid at the door of Solomon Meyer, Sr., by plaintiffs. Plaintiffs charge that he failed, neglected, and refused to render them statements and inform them touching their interests in the firm, and that they repeatedly requested him to let them examine the books. He persistently refused. After repeated attempts they, in the end, succeeded in having the books examined by a competent accountant, and a balance sheet struck, which show that on January 1, 1905, the assets of the business amounted to $442,354.34, and the liabilities to $154,578.14. Plaintiffs urge that the assets will be greatly diminished to their loss and injury. They ask for a statement of accounts and for the balance which they claim is due them. They pray for a judicial sequestration of the whole business.

The defendant interposed an exception on the ground that there was an improper joinder of parties defendant; there was no privity of interest between Meyer Bros., Limited, and Sol Meyer; and that the demands of plaintiffs are inconsistent and antagonistic. The exception also sets forth that there was an improper cumulation of actions against Meyer Bros., Limited, to wit, the suit for an appointment of a receiver, and in addition in the same petition a suit against Sol Meyer for the liquidation of the commercial firm of Meyer Bros. and against said Meyer personally. Lastly, defendant pleaded estoppel, on the ground that the late Herman Meyer signed the charter incorporating the firm of Meyer Bros., Limited; that he was one of the creditors and its vice president, and received an annual salary, and holder of a large amount of the issued and outstanding capital stock of the company; that Herman Meyer, from the creation of the corporation in 1901 until his death in 1904, participated in the business affairs of Meyer Bros. and as vice president of the corporation in the absence of the president he acted as president, and always held out that the corporation had been legally organized.

Sol Meyer, Sr., interposed an exception in all respects similar.

Reverting to the exception of improper joinder of defendants, the district court found that the demands were inconsistent, and sustained the exception to the extent of ordering the plaintiffs to elect on which of the two demands set forth in the petition they elected to proceed.

Plaintiffs, in compliance with the court's direction to elect elected to proceed on the demand for the appointment of a receiver,

and by reason of this election the other demand was dismissed as in case of nonsuit.

After this action of the court, the defendants answered, denying generally the allegations of plaintiffs, except they alleged that the corporation of Meyer Bros., Limited, had been legally organized; that after it had been organized the shares had been issued.

They further alleged in defense that shares of the corporation subscribed for by the clerks of Meyer Bros., Limited, had been partly issued and were held in trust by the company for the subscribers until fully paid; that other shares subscribed for had not been issued because not paid.

Defendants admitted that on the 30th day of May, 1903, they had received Herman Meyer's draft on J. Weis for $22,500 as a loan, and they alleged that they delivered to Herman Meyer its note for the amount and 6 per cent. interest, payable to the company's order, and by it indorsed, in blank; that the entry of the transaction was made upon its books at the time; that the said note, by whatever hands held, is a valid claim against the corporation. They deny all other charges brought against them by the plaintiffs.

The trial was subsequently proceeded with and a number of witnesses were heard.

The application for the appointment of a receiver to defendant company was rejected by the court.

Plaintiffs appeal.

The application, as the issues come to us on appeal, is for the appointment of a receiver. The charges brought by plaintiffs are of a very serious nature. Testimony covering many pages has been introduced to sustain them. At least as many pages were taken up by defendant's testimony in opposition.

We have considered carefully these issues, and are not convinced that in the present state of the case there is ground for the appointment.

Our reasons for thus concluding are that the rights of stockholders do not seem to be in the least peril. The corporation is entirely solvent. The surviving brother, Solomon Meyer, Sr., is a man of large means and amply able to meet all the demands urged. It does not appear to us that in any view the business has been so grossly mismanaged as to require such a radical change as that for which plaintiffs contend.

For reference sake we reproduce in the margin three of the sections of the law germane to the subject.[1]

The plaintiffs seek to bring the case within the terms of the statute; that is, within the provision of the quoted sections in the margin.

The fraud charged would require strong evidence to be convincing.

The purpose of the defendant company through Solomon Meyer, Sr., must have been laid for some time if he intended, as stated by plaintiffs, to prepare everything in order that, after the death of his brother, he would make it appear that a corporation had been formed before Herman's death.

It was, say plaintiffs, in order to make it appear that a corporation had been formed to control the business as long as he found it profitable.

The charge, according to one of the views expressed by plaintiffs, is that Solomon Meyer, Sr., waited until Herman Meyer went

[1]"Subsec. 2. A receiver may be appointed at the instance of any stockholder or creditor when the directors or other officers of the corporation are jeopardizing the rights of stockholders or creditors by grossly mismanaging the business or by committing acts ultra vires or by wasting, misusing or misapplying the property or funds of the corporation."

"Subsec. 7. At the instance of any stockholder or creditor when the corporation has been adjudged not organized according to law,"

"Subsec. 11. At the instance of any stockholder or creditor when the majority of the stockholders are violating the charter rights of the minority and putting their interest in imminent danger."

Acts 1898, pp. 312, 313, No. 159, § 1.

to New Orleans to consult his doctor, and that on February 17, 1904, he, availing himself of the power of attorney placed in his hands by Herman Meyer long prior to that date, executed a private act transferring the property of Meyer Bros. to Meyer Bros., Limited; that he did not put it on record until April, 1905.

If this view be correct, it remains that on Herman's return from New Orleans a short time thereafter he received his share of the certificates of stock, which were issued to him, and continued as the second officer of the corporation to discharge the duties of that officer.

The transfer of the property as before mentioned had been consummated in accordance with his wishes and he accepted the situation, by thus accepting his portion of the shares issued.

If, as stated at another time in argument, the asserted fraudulent deed was executed after the death of Herman, the testimony of the two witnesses and of Solomon Meyer must be treated as false.

We are not prepared to thus hold. Suspicion will not suffice in the face of positive sworn denial.

If the sale was made before the death of Herman, as we think was the case, the charges of false entries in the books and of other acts committed have no special import.

We pass without comment the charge that to defraud the heirs of Herman Meyer, Goldschmidt, the secretary, and Solomon Meyer, falsely and fraudulently executed as of date February 29, 1904, certificates of stock in Meyer Bros., Limited, to parties before named as holders of certificates of stock for it; for Herman Meyer accepted the 1,054 shares as alleged, and the other shareholders do not object, but on the contrary assent. Then it must be held that as to the date of the receipt of these certificates the plaintiffs are concluded touching the issuing of the certificate and the sale of Meyer Bros. to Meyer Bros., Limited.

The only other complaint we will consider at this time is that an entry in the books, to which we alluded in our statement of the case, was made as follows.

"J. Weis & Co., to bills payable, our note, own order, 6 per cent. interest, due March 1, 1904; proceeds remitted to J. Weis & Co., $22,500."

The charge here is that no note was issued; that J. Weis & Co., having money belonging to Herman Meyer, paid his draft on them in favor of Meyer Bros.; and that the entry was made in the way it was for the purpose of deceiving and misleading Herman Meyer and his heirs.

We are not of the opinion that any one would have conceived the idea that such an entry would enable the company to avoid the payment of the note to Herman Meyer during his life.

The amount was large. He was, we take it, an intelligent business man, the books were open to him. He surely would not have overlooked the amount and permitted the indebtedness to pass unnoticed. It is hardly possible.

And, on the other hand, one cannot conceive that it would be possible for any one to thus lay a plan in prevision of the death to defraud the heirs.

True, the entry complained of in the books touching the $22,500 is not a complete entry, although there is evidence of some of the experts to the contrary.

True, it should have been noted in the bills payable book, or, if the company had no such book, it should have been stated in the entry in the journal to show to whom the note had been delivered.

But this is a matter of form to which we cannot attach the greatest importance.

Before leaving a review of the different propositions pressed upon our attention to take up material facts reiterated by plaintiffs

in a succinct manner as entitling them to the relief for which they pray, we will briefly state our views touching the manner in which the business had been organized and in regard to some of the steps followed in conducting the business.

The firm of Meyer Bros. had been successful and was in a prosperous condition. In the year 1901 the partners agreed upon a change to a company limited. They sought to interest their clerks and other employés, and made provisions upon certain conditions to let their employés have comparatively few of the shares, but they retained full control.

They carried on a large business and occasionally they were borrowers. In obtaining loans and in certain other transactions they used the name of the old firm. It (the old firm) bound itself personally, and they (the members of the old firm) doubtless, for that reason, more readily obtained desired loans.

They, whether transacting in the name of the old firm or in the name of the company, do not appear to have been concerned about protection to themselves by the limited clause of the charter. They had been the partners of Meyer Bros. and they were the company.

We take it, as relates to the claims of third persons, that the company limited afforded to Solomon Meyer, Sr., and Herman Meyer scant protection. It was not the purpose of the company, as the parties were amply able in every way to meet all their liabilities. They must have known that as to third persons the company limited afforded them little, if any, protection. In some respects it (the company limited) bound the partners or incorporators of the limited concern inter se and that is about all.

The business relations between the brothers was, we take it, confidential. They postponed the sale of the property from Meyer Bros. to Meyer Bros., Limited, until the 17th day of February, 1904, and shortly thereafter the certificates of stock were issued.

Having stated their general views, we take up the "material facts reiterated" by plaintiffs before alluded to.

First, "that the expenses and liabilities had increased and the assets diminished."

This complaint of plaintiffs is not entirely borne out by the facts. True, there was a failure to make a profit in 1904; but in other years profits were made. The failure to make a profit in 1904, under the circumstances shown, was not necessarily due to gross mismanagement. It was not a favorable year in the cotton belt. In consequence, there was a falling off in business. The evidence sustaining this view is positive and uncontradicted. "A corporation not as prosperous as expected is no ground for the appointof a receiver." Current Law, vol. 2, p. 1465.

The next proposition is: "Identification of Weis & Co., instead of Herman Meyer, with the $22,500 loan, and professed ignorance of it by Goldschmidt."

We have already expressed our views about this indebtedness of the firm. We will only here state that beyond all question it was an indebtedness of the firm. That was never denied by the firm.

While the presumption is that the amount is due to the estate of Herman, if the note has not been transferred, yet the evidence is not absolute that it belongs to the estate. It has not been produced, and no statement has been made to prove its loss.

The company was not the keeper of the note.

The next proposition is "that defendants attempted to keep $24,746.50, excess capital by Herman Meyer, in the business, to the benefit of Solomon Meyer, Sr., and to the injury of the plaintiffs."

If this be as charged, the corporation is not liable therefor. Solomon Meyer, Sr.,

owes an accounting, and not the company limited.

It affords no ground for a receiver.

The next contention of plaintiffs is that "defendants refused to disclose information touching the business to plaintiffs."

There is no satisfactory proof that plaintiffs made formal application to examine the books of the firm and for information regarding the business before their expert called for the purpose.

Nothing was denied to him. He was given all requested information.

It is also reiterated that Solomon Meyer, Sr's., "acts were ultra vires in issuing stock to himself without adequate consideration and thereby usurped control of the business."

The weight of the testimony proves that Herman was informed touching the business. He knew all that he ever expressed a wish to know. His executors are bound by his knowledge of shares.

The amount issued to Solomon Meyer, Sr., must have been known to him (Herman).

We have already referred to an accounting in this respect, if it be as plaintiffs charge.

Plaintiffs say that special meetings of the directors and of the stockholders were held without notice to plaintiffs.

That charge does not appear to fall within the grounds laid down in the statute, unless a resulting or intended fraud be shown.

Plaintiffs charge that there "was a fictitious meeting held at 8 o'clock p. m. on April 17, 1904 (Sunday), and at a time when Goldschmidt, the secretary, was in Texas."

This brings up another question of fact. It is admittted that the date was erroneous; that it should have been stated as the 15th, instead of the 17th, of April.

For the sake of business regularity these gross mistakes should not be made, and there should be no antedating or post dating.

This was the act of the secretary. The trend of the testimony does not trace the error, or whatever it was,' to Solomon Meyer, Sr. A charge does not fall within the ground laid down in Act No. 159, p. 312, of 1898,. unless a fraud be shown.

Reverting to the general issues: If it was· the intention of Solomon Meyer, Sr., to defraud the corporation, it was a very bungling· attempt.

The appointment of a receiver may have· far-reaching effects. It may paralyze a business, jeopardize its credit, and ruin its standing. It should be done only when it is manifest that it should be made.

We must decline to interfere with the· judgment.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is affirmed. The right of plaintiffs to sue· for a settlement and an accounting is reserved; plaintiffs to pay costs.