145 So.2d 644 (1962)
Hermina M. FARWELL
v.
MILLIKEN & FARWELL, INC.
No. 743.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 1962.
Rehearing Denied October 29, 1962.
Certiorari Granted January 3, 1963.
F. Y. Lozes, New Orleans, for plaintiffs-appellants.
J. P. Little, J. M. Colomb, Jr., New Orleans, for defendants-appellees.
Before FRUGÉ, MENUET and ELLIS, JJ.
*645 J. ADOLPH MENUET, Judge pro tem.
This suit was brought by Mrs. Hermina M. Farwell against Milliken & Farwell, Inc. seeking the appointment of a receiver for said corporation. Plaintiff also filed a similar suit against Westover Planting Company, Ltd., a separate but closely related corporation. Because the alleged factual situation raised the identical legal issue, the two suits were ordered consolidated by the trial court. Other persons alleging themselves to be the owners of all the outstanding shares of both corporations, with the exception of the shares owned by the petitioner, were permitted to file oppositions to the applications.
Defendants, Milliken & Farwell, Inc. and Westover Planting Company, Ltd. have filed exceptions of no right and no cause of action to the original and supplemental petitions of plaintiff.
For right of action, the plaintiff asserts she is the widow of Charles A. Farwell who died in January, 1954. At the time of his death, Charles A. Farwell and F. Evans Farwell owned in equal proportions all the shares in both closely associated corporations. Under the terms of the will of Charles A. Farwell, petitioner inherited 125 shares of the capital stock of Milliken & Farwell, Inc. and 126 shares of the capital stock in Westover Planting Company, Ltd. The remaining shares of the decedent were inherited by his children of a former marriage. F. Evans Farwell has retained his 50% interest. It can be determined from the petition, and the parties so concede, that plaintiff is a minority stockholder, owning approximately 12½% of the shares in each corporation.
For cause of action, the plaintiff alleges that F. Evans Farwell, president of both companies, from 1954 to date has voted himself excessive annual salaries and bonuses; has charged many personal debts to the corporations; and has paid excessive interest to members of his family for loans to the corporations. She charges that by his mismanagement during the period of 1954 through 1960, both corporations have shown average annual operating losses in the manufacture of raw sugar which is the primary activity of the said corporations.[1] Petitioner further alleges in her second supplemental petition the president entered into a contract[2] with another stockholder and member of the board of directors under which this stockholder received from Milliken & Farwell, Inc. $11,525.00 during the period from June 30, 1961, through November, 1961. She charges these payments *646 "in view of all the circumstances can be interpreted in no other way than that of a payoff in order to persuade Dr. Farwell to vote at the shareholders meeting and all the board meetings with the President of the corporation and that this constituted a conspiracy on the part of the President and Dr. Farwell to violate her charter rights and to further waste and dissipate the assets of the corporation".
Following the trial, the lower court rendered judgment in both suits maintaining the exceptions of no right and no cause of action. In his assigned reasons, he noted the absence of any allegations that either the corporations or the president were insolvent and he was of the opinion that plaintiff was not entitled to the relief sought. He would not appoint receivers for these corporations which are patently solvent at this time.
The plaintiff-appellant now asserts that she has alleged facts constituting fraud and breach of trust which must be accepted as true for the purpose of the exceptions and which if so accepted entitles her to trial on the merits without regard to solvency of the corporations or their president. It will be noted the petitions fail to allege specifically fraud and breach of trust.
In determining whether a petition states a cause of action, it is viewed in the light most favorable to the petitioner, and the exception of no right or cause of action may not be sustained unless, conceding all facts in the petition to be true, there is no claim upon which relief may be granted. 9 Tul.L.R. 17. Fraud must be alleged with particularity. LSA-C.C.P. Art. 856
An examination of the various allegations of the petitions clearly show that both corporations possess considerable assets and both are solvent at this time. In fact, the parties stipulated before this court that the corporations and their common president were amply solvent. However, her attorneys maintain because of the allegations of facts which must be accepted as true, her petitions set forth causes of action under specific provisions of our statutory law.
LSA-R.S. 12:752 provides, in part, as follows:
"Grounds for appointment of receiver. All district courts may appoint receivers to take charge of the property of corporations, and of the property of foreign corporations actually located herein under the following conditions: * * *
"(2) At the instance of any shareholder or creditor, when the directors or other officers of the corporation are jeopardizing the rights of shareholders or creditors by grossly mismanaging the business or by committing acts ultra vires, or by wasting, misusing, or misapplying the property or funds of the corporation;
* * * * * *
"(11) At the instance of any shareholder when a majority of the shareholders are violating the charter rights of the minority and putting their interests in imminent danger."
LSA-R.S. 12:36 provides as follows:
"Relation of directors and officers to corporation

"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment, and skill which ordinarily prudent men would exercise under similar circumstances in like positions."
LSA-R.S. 12:56 provides, in part, as follows:
"Who may institute involuntary proceedings. A. A petition for involuntary proceedings for dissolution may be filed by either:
"(1) A shareholder or shareholders, severally or jointly, who have been registered owners for a period of not *647 less than six months of not less than twenty per cent. of the entire outstanding shares of the corporation."
Section 752 of Title 12 of the Revised Statutes originally formed a portion of Act 159 of 1898, the entirety of which is now incorporated in Section 751 et seq. of Title 12 of the Louisiana Revised Statutes of 1950 LSA-R.S. 12:36 and LSA-R.S. 12:56 were originally incorporated in Act 250 of 1928, generally known as the Louisiana Business Corporations Act.
Prior to the enactment of Act 250 of 1928, a receiver could be appointed at the instance of a minority shareholder holding less than 20% of the shares under the provisions of Act 159 of 1898 without regard to the solvency of the corporation. However, in the case of Peiser v. Grand Isle (1952) 221 La. 585, 60 So.2d 1, 3, the Supreme Court reviewed the prior jurisprudence and reconciled the statutory provisions in the following language:
"While the provisions of subsections (2) and (11) of LSA-R.S. 12:752 set forth the causes for which a receivership may be sought by a shareholder, the appointment of a receiver is not mandatory but is subject to sound judicial discretion. Kinnebrew v. Louisiana Ice Co., 216 La. 472, 43 So.2d 798; Kohler v. McClellan, 5 Cir., 156 F.2d 908, certiorari denied 329 U.S. 781, 67 S.Ct. 203, 91 L.Ed. 670; Duval v. T. P. Ranch Co., 151 La. 142, 91 So. 656; Davies v. Monroe Waterworks & Light Co., 107 La. 145, 31 So. 694. In determining whether or not the facts justify and make advisable a receivership, in the absence of a clear showing of fraud or breach of trust the courts are slow to interfere, will order the appointment of a receiver only when it is manifest that it should be made, and are influenced by a consideration of whether such action would serve a useful purpose. Kinnebrew v. Louisiana Ice Co., supra; Reynaud v. Uncle Sam Planting Co., 152 La. 811, 94 So. 405; Duval v. T. P. Ranch Co., supra; Marks v. American Brewing Co., 126 La. 666, 52 So. 983; Stendell v. Longshoremen's Protective Union Benev. Ass'n, 116 La. 974, 41 So. 228; Meyer v. Meyer Bros., 116 La. 456, 40 So. 794; Bartlett v. Fourton, 115 La. 26, 38 So. 882; Posner v. Southern Exhaust & Blow Pipe Co., 109 La. 658, 33 So. 641. This court will not disturb the ruling of the trial judge in his refusal to appoint a receiver except in a case where it clearly appears that the interests of the minority of stockholders are in imminent danger. Kinnebrew v. Louisiana Ice Co., supra. This is particularly true where the parties have a full and adequate remedy through other means. Carey v. Dalgarn Const. Co., 171 La. 246, 130 So. 344; Allen v. Llano Del Rio Co. of Nevada, 166 La. 77, 116 So. 675; Reynaud v. Uncle Sam Planting Co., 152 La. 811, 94 So. 405; Russell v. Citizens' Ice Co., 118 La. 442, 43 So. 44; Marcuse v. Gullett Gin Mfg., Co., 52 La.Ann. 1383, 27 So. 846."
Accordingly, a receiver will not be appointed for a solvent corporation at the instance of a minority shareholder owning less than 20% of its outstanding shares in the absence of a clear showing of fraud or breach of trust and then only when it is manifest that it should be done after consideration of whether such action would serve a useful purpose.
The question now presented is whether the facts alleged in the petitions herein, as distinguished from the conclusions of the pleader, constitute "fraud or breach of trust" as these terms are understood in our jurisprudence.
Fraud has recently been defined in the case of Colvin v. Division of Employment Security, 132 So.2d 909, 911 (La.App.1961) as follows:
"Upon our examination of the term `fraud' or `fraudulent' we find that two *648 elements are essential to constitute legal fraud, the intention to defraud and loss or damage or a strong probability of loss or damage. Slocomb and others v. Real Estate Bank of Arkansas, 2 Rob. 92. A mere misrepresentation or in this instance, a false or incorrect account, is not synonymous with fraud as used in the legal sense. Buxton et al. v. McKendrick et al., 223 La. 62, 64 So.2d 844.
"The necessity for the combination of the two elements is emphasized in L.S.A.-Civil Code article 1847 in defining fraud as applied to contracts as:
"`Fraud, as applied to contracts is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantage to the one party, or to cause an inconvenience or loss to the other.'"
In the above case, an employee of a state agency was charged with making false and fraudulent representations in an expense account by setting out therein items of expense incurred on a trip to Dallas, Texas, when in fact the trip had been made to Omaha, Nebraska. The Court points out that while the representation was false it was not fraudulent in the absence of an intent to defraud. Accordingly, to constitute legal fraud as applied to obligations there must exist the intention to defraud as well as loss or damage or a strong probability of loss or damage. This intent to defraud must be attended with external manifestations of the will which could reasonably influence the mind of the victim thereby producing error.
Article 1847, Subparagraph 1 of the LSA-Civil Code provides as follows:
"(1) Error is an essential part of the definition; an article [artifice] that can not deceive can have no effect in influencing the consent, and can not injure the validity of the contract."
Article 1848 and 1849 of the LSA-Civil Code provides as follows:
"Fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumptions or by legal presumptions, as well as by other evidence. The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence."
"Some circumstances and acts attending particular contracts, are by law declared to be conclusive; and others, presumptive evidence of fraud. These laws will be found in the proper divisions of this Code, treating of these contracts."
Under these codal articles allegations of fact must be alleged to support proof of fraud regardless of whether or not on trial proof may consist of evidentiary facts or legal presumptions. Fraud or its essential element intent cannot be imputed. In the instant case the necessary essential of an intent to defraud cannot be imputed from the alleged misdeeds alone if we disregard the conclusions of the pleader. There are no facts alleged tending to show artifices, maneuvers and other external manifestations of the will which could show an intent to defraud. It will be noted further with reference to the alleged contract that these conclusions seem to relate to future acts which may take place by virtue of the contract. Fraudulent misrepresentation must relate to facts then existing or which have previously existed. Orr v. Walker (La.App.1958) 104 So.2d 226. This rule of law seems justified in that future acts of what might take place can only be considered as a conclusion and not as a proper allegation of fact.
Appellants contend that LSA-R.S. 12:36, above quoted, establishes a fiduciary relationship between the directors and officers of a corporation and its shareholders. They assert if the alleged acts do not constitute *649 "legal fraud", they do show a "breach of trust" violating her charter rights as that term is employed in the Peiser Case.
It will be observed that LSA-R.S. 12:36 declares the existence of a fiduciary relationship and sets out as standards of conduct good faith and ordinary prudence. Under these standards "breach of trust" would include actions prompted by fraudulent design done in utter bad faith and would not embrace within its meaning acts of negligence, ignorance or mistake. This standard of conduct requires the design of legal fraud as applied to contracts. In the absence of allegations of fact manifesting fraudulent intent and utter bad faith there can be no breach of trust.
In his reasons for maintaining the exceptions, the trial court stated that he was of the opinion plaintiff was not entitled to the relief sought and would not appoint a receiver for these corporations which were patently solvent. The appellant contends that the lower court required an allegation of insolvency as a prerequisite to the cause of action. We do not understand his opinion to so hold. The learned judge found that the petitions patently showed solvency. Why would he require inconsistent allegations? We understand his opinion as holding simply that because of the solvency of the corporations, he would not order receiverships under the facts of the petition, because if accepted as true, petitioner was not entitled to the relief sought by her. If the facts asserted by her were true, she had other and adequate legal remedies to redress her grievances.
A denial on this basis is in complete accord with the jurisprudence.
The Supreme Court in the case of Reynaud v. Uncle Sam Planting & Mfg. Company, 152 La. 811, 94 So. 405, 408 stated:
"The appointing of a receiver to a healthy going corporation, is calculated to affect injuriously its business and affairs; and such should not be done where the complaining party has other adequate remedies. The statute under which the appointment in this case is sought should be strictly construed"citing authorities.
In another case where the majority stockholders were paying themselves illegal commissions and salaries out of proportion to services rendered the Court rules as follows:
"* * * the plaintiff's remedy is a suit to bring such funds back into the treasury of the corporation and to prevent future excessive payments by injunction. It would be disastrous to the business of the corporation to throw it into an expensive receivership." Carey v. Dalgarn Construction Co. Inc., 171 La. 246, 130 So. 344, 348.
For the above and foregoing reasons the judgment of the District Court is affirmed.
Affirmed.
NOTES
[1] Plaintiff in petition does concede that because of income received from oil and gas leases, Milliken & Farwell has shown a net profit during this period. However, in the case of Westover Planting Company, Ltd. she alleges the oil income has been insufficient to offset losses from sugar production with the result that this corporation has shown an average net loss for the seven year period.
[2] Attached to the petition and made part therof by reference is the minutes of a board of directors meeting of Milliken & Farwell, Inc. dated October 10, 1961. The resolution with reference to the contract in question reads as follows: "As Charles Farwell has agreed April 1, 1961, that in an `emergency' (such as incapacity of F. Evans Farwell, or for other reasons) he would step in with full responsibility and: 1. Attempt to run business, or 2. Supervise work of a General Manager, or 3. Liquidate, President F. Evans Farwell made a verbal contract with him as follows: For one year, starting April 1, 1961, Charles Farwell would be available under 1-2-3 above in an emergency. Charles Farwell to be paid $1,000.00 per month or a total of $12,000.00 from April 1, 1961 through March 31, 1962, together with such additional and reasonable compensation from time to time for his extra ordinary services for the benefit of the company. Such additional compensation payments which are made from time to time shall be subsequently ratified by the Board of Directors. Therefore, on motion of Lynne Hecht Farwell, seconded by W. T. Gonzales, it was: RESOLVED: That the verbal contract made by F. Evans Farwell with Charles Farwell IV, beginning April 1, 1961 and terminating March 31, 1962, is hereby approved and ratified. Motion unanimously carried."