**LOUISIANA WORLD EXPOSITION,
Plaintiff–Appellant,**

v.

**FEDERAL INSURANCE COMPANY, et
al., Defendants–Appellees.**

No. 87–3264.

United States Court of Appeals,
Fifth Circuit.

Oct. 11, 1988.

Joseph E. Friend, Friend, Wilson, Spedale & Draper, New Orleans, La., Claude F. Reynaud, Jr., Christine Lipsey, Breazeale, Sachse & Wilson, Baton Rouge, La., for plaintiff-appellant.

Dermot S. McGlinchey, B. Franklin Martin, III, Stephen W. Rider, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for Bagneris, et al.

John T. Nesser, III, Eric H. Weimers, New Orleans, La., Lee Squitieri, New York City, for Terence R.D. Burn, et al.

Before TIMBERS [*], KING and HIGGINBOTHAM, Circuit Judges.

KING, Circuit Judge:

Louisiana World Exposition, Inc. appeals from the district court's dismissal, for failure to state a claim upon which relief may be granted, of LWE's complaint against its officers and directors (and their respective insurers) for gross negligence, mismanagement and breach of fiduciary duty. LWE is a Louisiana nonprofit corporation presently in a case under Chapter 11 of the Bankruptcy Code. After having been authorized by the bankruptcy court to do so, the Contractor Creditors' Committee of LWE brought this lawsuit on behalf and in the name of LWE. The district court dismissed the action for failure to state a claim upon which relief may be granted. It reasoned that because Louisiana law precludes individual corporate creditors from maintaining such a cause of action against the officers and directors of the corporation, a creditors' committee composed of such creditors

[*] Circuit Judge of the Second Circuit, sitting by designation.

may not assert the action on behalf of the corporate debtor in bankruptcy. Finding that the district court erred as a matter of law in dismissing LWE's complaint, we reverse the judgment and remand to the district court for further proceedings.

## I.

### FACTS AND PROCEEDINGS BELOW

Louisiana World Exposition, Inc. ("LWE"), a Louisiana nonprofit corporation, is the entity that organized the New Orleans World's Fair of 1984. The fair was beset by severe financial difficulties, leaving LWE heavily in debt. As a result, on November 6, 1984, LWE filed for reorganization under Chapter 11 of the United States Bankruptcy Code (the "Code" or "Bankruptcy Code"). LWE continued as a debtor-in-possession. Thereafter, the bankruptcy court appointed a Contractor Creditors' Committee ("the Committee"), see 11 U.S.C. § 1102(a), to represent the interests of a group of creditors of the bankruptcy estate of LWE.

In an April 8, 1985 letter to LWE's Chapter 11 counsel, the Committee demanded that LWE file a complaint against various LWE officers and directors for gross negligence, mismanagement and breach of fiduciary duty.[1] The Committee's demand was presented to the management committee of LWE's Board of Directors at an April 10, 1985 meeting. The management committee, recognizing that it had an inherent conflict of interest, declined to vote on the demand. Construing that response as a

refusal on the part of the debtor-in-possession to pursue the claim, the Committee filed an application in the bankruptcy court seeking permission to institute the suit on LWE's behalf. In that application, the Committee summarized the acts of mismanagement alleged in the demand letter, see supra note 1, and noted that LWE's management had effectively refused to file suit. The Committee asserted that "[t]he benefits to be derived from the action, if successful, would accrue greatly to the benefit of all of the Debtor's creditors;" in addition, the Committee included a proposed contingent attorney's fee schedule for the bankruptcy court's evaluation.

A hearing on the Committee's application was conducted on June 13, 1985. That day, in a minute entry, the bankruptcy court found that the notice given by the Committee to LWE's management was adequate and that there was no opposition to the application. Accordingly, the bankruptcy court concluded that the application was timely filed and was in order. It then granted the Committee "leave to file a complaint on behalf of and in the name of the Debtor, [LWE], against various of the officers, directors, and managers of [LWE] and their respective insurers."

The contemplated action was filed by the Committee on LWE's behalf on July 10, 1985 in the United States District Court for the Eastern District of Louisiana against various officers and directors of LWE and their insurers (collectively, "the appellees").[2] In summary, the complaint alleged

---

1. In its subsequent application to the bankruptcy court for authorization to file a lawsuit, the Committee listed various acts of mismanagement, injurious to LWE, that it had called to the attention of the debtor-in-possession in the demand letter. These included:
   (a) Expenditures of funds in excess of projected cash income;
   (b) Failure to properly market and sell assets;
   (c) Failure to require contract compliance with exhibitors, concessionaires, and other parties who dealt with LWE;
   (d) Undertaking large financial obligations incident to the construction of leasehold improvements which LWE knew or should have known that it would be unable to recoup the expenditures from the sale of such leasehold improvements;

   (e) Failure to adequately secure season passes and admission tickets;
   (f) Failure to staff and provide effective cost controls and adhere to budgetary restraints;
   (g) Excessive payments to Barry Howard & Associates and other consultants;
   (h) Failure to obtain proper projection of expected income;
   (i) Reliance on projections and reports after the reports proved to be inaccurate or after the assumptions upon which the reports were based were altered by LWE.

2. We recognize, of course, that during the course of these proceedings, several of the original named defendants have been dismissed from the lawsuit. Moreover, the Committee has amended its original complaint to add several

that the appellees are liable to LWE for gross negligence, mismanagement and breach of fiduciary duty.[3] With respect to damages, the complaint asserted that "LWE has incurred damages in the amount of $120,956,959.06 plus additional amounts not yet quantified as a direct result of the individual defendants' failure to fulfill their obligations to LWE." On January 20, 1987, the appellees filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, a motion for summary judgment.

On March 17, 1987, the district court granted the motion to dismiss and, accordingly, did not rule on the summary judgment motion. The transcript of the hearing does not reveal the grounds for the district court's decision. On March 19, however, the Committee filed a motion for a rehearing which the district court denied after oral argument on April 10. At the hearing on the Committee's petition for rehearing, the district court clarified the basis for its earlier ruling when it concluded that a group of creditors, simply by virtue of being a creditors' committee and filing suit in the name of the corporation, cannot bring suit against the officers and directors of an insolvent corporation where, absent allegations of fraud, state law prevents injured creditors of that corporation from bringing suit directly against its officers and directors. The district court, uneasy with what it termed the "legal fiction" that the Committee, for the purpose of this suit, stood in LWE's shoes, concluded that the Committee had no greater right to successfully maintain such an action than would any injured creditor. The Committee filed notice of appeal from the district court's dismissal of its suit on April 9.

This appeal involves the interaction of Louisiana corporate law and federal bankruptcy law. The fundamental question before us is whether the Committee—suing on behalf and in the name of LWE—can maintain an action against the appellees, absent allegations of fraud, for gross negligence, mismanagement and breach of fiduciary duty. The parties have raised a wide variety of arguments in support of their respective answers to this central inquiry. We shall address their arguments within the framework of our general analysis of the question presented.

## II.

## LOUISIANA LAW

### A. Nature of the Lawsuit

As the parties cannot seem to agree on a characterization of the instant action, we must, as an initial matter, examine the complaint in order to divine the nature of this lawsuit. In doing so, we leave aside for the moment such thorny issues as whether the cause of action alleged actually exists under state law and whether the Committee is entitled to assert it even if it does exist. We begin by noting that on its face, the complaint names LWE as the plaintiff in this lawsuit, not individual creditors of LWE or the Committee. The complaint charges that the named individual defendants, in their capacity as officers and directors of LWE, are liable to LWE for gross negligence, mismanagement and breach of fiduciary duty. In general terms, the complaint alleges: (1) conflicts of interest on the part of officers and directors which, in many cases, were resolved against the interests of LWE and in favor of outside interests; (2) grossly inadequate formulation, implementation and monitoring of budgetary constraints which led to expenditures far in excess of reasonable expectations of income; (3) insufficient oversight of personnel; (4) inadequate marketing and planning of the fair itself; and (5) unreasonable failure to enforce the terms and conditions of LWE's contracts and agreements. Having determined that the Committee's complaint alleges that the appellees were grossly negligent, mismanaged LWE and breached their fiduciary

---

additional parties. Therefore, "the appellees" will refer solely to those defendant officers, directors and insurers remaining in this suit.

**3.** The insurers are allegedly liable to LWE *in solido* with the officers and directors on the basis of various liability policies issued to insure those officers and directors.

obligations to the corporation,[4] we must now determine as a threshold issue whether those allegations state a claim under Louisiana law. Where, as here, no cause of action is asserted arising under the Bankruptcy Code and thereby implicating "some federal interest," the viability of the claim asserted by LWE must be evaluated under Louisiana law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

## B. Statutory Duty

In Louisiana, nonprofit corporations are governed by the Louisiana Nonprofit Corporation Law, La.Rev.Stat.Ann. § 12:201 *et seq.* (West 1969). Section 12:226(A) of the Louisiana Nonprofit Corporation Law defines the obligation or duty owed by an officer or director of a nonprofit corporation to that corporation, and provides as follows:

> Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its members, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions.

La.Rev.Stat.Ann. § 12:226(A) (West 1969). As is clear from the language of the statute, section 12:226(A) creates a fiduciary duty on the part of corporate officers and directors which runs to the nonprofit corporation and its members. It also describes the standard of care which governs the conduct of corporate officers and directors in fulfilling their respective obligations to the nonprofit corporation.

While the Louisiana courts have not had occasion to construe the meaning of section 12:226(A), we are properly guided in our review by cases under an analogous provision in the Louisiana Business Corporation Law, La.Rev.Stat.Ann. § 12:1 *et seq.* (West 1969). Section 12:91 of the Louisiana Business Corporation Law provides, in pertinent part, as follows:

> Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions.

La.Rev.Stat.Ann. § 12:91 (West 1969). Section 12:91 is virtually identical to section 12:226(A)—it establishes a fiduciary duty running to the same beneficiaries (substituting "shareholders" for "members") and describes the same standard of care. Moreover, the Official Comment to section 12:226 states that "provisions relating to non-profit corporations have been conformed generally to those relating to business corporations." Consequently, we look to cases involving business corporations in determining whether LWE may maintain an action for gross negligence, mismanagement and breach of fiduciary duty against its officers and directors.

## C. Louisiana Case Law

### 1. *The Duty Owed by the Directors and Officers to the Corporation*

Under Louisiana case law, it is well-settled that "[t]he corporation itself and, in proper cases, the stockholders have a right of action against the agents of the corporation for gross negligence, maladministration of the corporate affairs, and omissions of official duty...." *Allen v. Cochran*, 160 La. 425, 107 So. 292, 293 (1926).[5] The standard of care expected of corporate offi-

---

**4.** The appellees' notion that the Committee's action is, in reality, one by individual creditors who have banded together for the purpose of recovering their debts may be traced, in large measure, to the Committee's call for damages in the amount of $120,956,959.06—a figure that approximates the total amount of LWE's debts. The Committee's adoption of that figure as a damage estimate, however, does not operate to convert an action on behalf of LWE against its officers and directors for gross negligence, mismanagement and breach of fiduciary duties into a suit by LWE's creditors to recover their claims, as such, from the appellees.

**5.** See *infra* at sections II C.(2) and C.(3) for a discussion of creditors' rights with respect to this right of action.

cers and directors has been expressed as follows:

> Directors are not liable for mere errors of judgment on their part where they act in good faith. They are only required to exercise reasonable care and diligence and act in good faith. But they are liable for wilful neglect of duty, gross negligence or their fraudulent breach of trust.

*Pool v. Pool,* 16 So.2d 132, 135 (La.Ct.App. 1943). Corporate officers and directors, therefore, are liable to the corporation for gross negligence in the discharge of their duties. *Allen,* 107 So. at 293; *Pool,* 16 So.2d at 135; *see also Bacher v. Albert,* 180 La. 108, 156 So. 191 (1934); *Reliance Homestead Ass'n v. Nelson,* 179 La. 680, 154 So. 734, 736 (1934) ("it is a well recognized rule, by both the federal and state courts, that an executive officer of a corporation cannot be held liable for errors of judgment, where he acts with reasonable care, without corrupt intent, and in good faith"); *Stock v. E.A. Fabacher, Inc.,* 185 So. 48, 49 (La.Ct.App.1938) (officers and directors of a corporation are answerable only to the company for their acts of gross negligence or their maladministration of corporate affairs). *Cf. Edwins v. Lilly,* 422 So.2d 1217, 1222 (La.Ct.App.1982), *writ ref'd,* 426 So.2d 178 (La.1983) (applying the Louisiana statute concerning the standard of care exacted of corporate officers and directors to a liquidator of an insolvent corporation and concluding that liability may arise from neglect of duty). *See generally* Comment, *Duty of Corporate Officers and Directors In Louisiana,* 29 La.L. Rev. 691, 692–98 (1969). The appellees' proposition to the contrary is in error.

The appellees, relying on *Farwell v. Milliken & Farwell, Inc.,* 145 So.2d 644 (La. Ct.App.1962), argue that LWE cannot maintain an action against its officers and directors for gross negligence, mismanagement or breach of fiduciary duty absent allegations of fraud. In *Farwell,* the court was faced with a suit by a disgruntled minority stockholder who sought to force the appointment of a receiver for a patently solvent corporation. Relying on *Peiser v. Grand Isle, Inc.,* 221 La. 585, 60 So.2d 1 (1952), the court noted that "in the absence of a clear showing of fraud or breach of trust the courts are slow to interfere, will order the appointment of a receiver only when it is manifest that it should be made...." *Farwell,* 145 So.2d at 647 (quoting *Peiser,* 60 So.2d at 3). Guided by the Louisiana statute governing the fiduciary duty owed a corporation by its officers and directors, the court wrote that:

> Under these standards "breach of trust" would include actions prompted by fraudulent design done in utter bad faith and would not embrace within its meaning acts of negligence, ignorance or mistake. This standard of conduct requires the design of legal fraud as applied to contracts. In the absence of allegations of fact manifesting fraudulent intent and utter bad faith there can be no breach of trust.

*Farwell,* 145 So.2d at 649. From this passage, the appellees derive their *"Farwell standard"* of officer and director liability —a standard which requires a level of proof amounting to legal fraud. Our review of Louisiana law reveals that the true standard requires only a showing of gross negligence.

First, we note that *Farwell* is readily distinguishable from the instant case. *Farwell* merely outlined the level of proof required to demonstrate a "breach of trust" sufficient to justify appointing a receiver for a healthy corporation—an action "calculated to affect injuriously [the corporation's] business and affairs...." *Reynaud v. Uncle Sam Planting & Mfg. Co.,* 152 La. 811, 94 So. 405, 408 (1922). *Farwell* did not presume to promulgate or identify a general rule of Louisiana corporate jurisprudence governing actions by corporations against their agents for gross negligence, mismanagement or breach of fiduciary duty.

Second, we note that even if *Farwell* could be construed in the manner that appellees posit, we would be constrained from adopting its reasoning for to do so would be to ignore express pronouncements by the Louisiana Supreme Court and to rule contrary to the weight of Louisiana prece-

dent. *See e.g. Allen,* 107 So. at 293; *Pool,* 16 So.2d at 135.

Finally, we note that the appellees' position is at odds with the clear language of the Louisiana statutes governing the obligations of corporate officers and directors. *See* La.Rev.Stat.Ann. §§ 12:91, 12:226(A) (West 1969). If an officer or director of a corporation is shielded from liability to the corporation absent a showing of bad faith or fraud, then the statutory language requiring that the officers and directors "discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions" would be rendered nugatory. Under the appellees' formulation, an officer or director could fulfill his obligations to the corporation by acting with no diligence or skill whatsoever so long as he did not act in bad faith or with fraudulent intent. Under the circumstances, we must reject the appellees' proposition that LWE cannot maintain an action against LWE's officers and directors for gross negligence,[6] mismanagement and breach of fiduciary duty.

### 2. *The Creditors' Ability to Assert Breach of the Duty Owed*

Louisiana law clearly establishes a cause of action for breach of fiduciary obligations and mismanagement by corporate officers and directors who are grossly negligent in the performance of their duties. This cause of action, however, runs solely in favor of the corporation and its shareholders—or, in the case of a nonprofit corporation, the corporation and its members, if any. In *Unimobil 84, Inc. v. Spurney,* which also involved LWE, we noted that under Louisiana law:

"Officers and directors are merely agents of the corporation, and, except for

acts of malfeasance, are answerable to it alone. A *creditor* of a corporation has no right of action against the corporation's agents for gross negligence or maladministration of corporate affairs or omission of duty." *Wirth v. Albert,* 174 La. 373, 141 So. 1, 4 (1932); *Bacher v. Albert,* 180 La. 108, 156 So. 191 (1934); *Allen v. Cochran,* 160 La. 425, 107 So. 292 (1926).

797 F.2d 214, 215 (5th Cir.1986) (emphasis added).

In addition to *Unimobil* and the cases cited by it in the quotation above, the appellees refer us to three cases arising out of the LWE insolvency as further support for the principle that Louisiana law does not give a creditor a direct cause of action against a director of an insolvent corporation for damages resulting from gross negligence, mismanagement or breach of fiduciary duty. *Hot Boudin Co. v. Harrison Price Co., Inc.,* 800 F.2d 1143 (5th Cir. 1986); *1884 Shop, Inc. v. Harrison Price Co., Inc.,* 813 F.2d 406 (5th Cir.1987); *Colomb d/b/a Uptown Square Winery v. Harrison Price Co., Inc.,* 814 F.2d 230 (5th Cir.1987). In each of these cases, this court affirmed the district court's dismissal of the complaint for legal insufficiency, but we rendered an opinion in only the last. In *Colomb,* we pointed out that all three cases involved "virtually identical" complaints in which a creditor was seeking damages based on alleged intentional misrepresentation and negligence by the directors of LWE. We held that *Unimobil* was controlling authority, noted that the two prior cases had been dismissed, affirmed the dismissal in *Colomb,* and warned counsel that further appeal of the same issue would result in sanctions. *Colomb,* 814 F.2d at 230. It is clear, therefore, beyond peradventure that Louisiana law does not give a creditor a direct cause of action against a director of an insolvent corporation for

---

**6.** Given that the Committee's complaint may be read to state a cause of action for gross negligence as well as for simple negligence, we see no need to decide whether simple negligence alone will suffice to render a corporate principal liable for his mismanagement. At some point in the proceedings, the issue may have to be decided. At this point in the proceedings, however, any conclusion on that issue would not only be premature, but would also be without benefit of adequate argument and briefing by the parties. Consequently, we will refrain from addressing that issue at all; rather, for the sake of convenience, we will refer to gross negligence for the balance of this opinion.

damages for gross negligence, mismanagement or breach of fiduciary duty.

The appellees also cite a number of other cases in support of the related proposition that Louisiana law does not permit a creditor to sue a corporate director or officer on the debt owed by the corporation to that creditor in the absence of fraud. That is, allegations by creditors of gross negligence, mismanagement or breach of fiduciary duty on the part of officers and directors do not provide a sufficient reason for courts to pierce the corporate veil and hold directors personally liable for the debts of the corporation. *Fine Iron Works v. Louisiana World Exposition, Inc.,* 472 So.2d 201 (La.Ct.App.), *writ ref'd,* 477 So. 2d 104 (La.1985) (exception of no cause of action sustained where a creditor of LWE seeking payment of LWE's debt by its directors based its complaint on theory that the directors had breached their fiduciary duties to the plaintiff creditor); *Dutton & Vaughan v. Spurney,* 496 So.2d 1126 (La. Ct.App.1986), *writ ref'd,* 501 So.2d 208 (La. 1987) (dismissal of LWE creditor's complaint against LWE directors upheld for failure to state a cause of action where theories were negligent misrepresentation and breach of fiduciary duty); *City Stores Co. v. NEI Corp.,* 357 So.2d 1364 (La.Ct. App.1978) (portion of complaint seeking to hold corporate officers personally liable for default of corporation's lease dismissed for failure to state a claim where both sides agreed in stipulation that no fraud was involved); *Altex Ready–Mixed Concrete Corp. v. Employers Commercial Union Ins. Co.,* 308 So.2d 889 (La.Ct.App.), *writ ref'd,* 312 So.2d 872 (La.1975) (corporate treasurer held personally liable on debt of corporation because of fraud on his part); *Dolese Concrete Co. v. Tessitore,* 357 So.2d 869 (La.Ct.App.), *writ ref'd,* 359 So.2d 620 (La.1978) (corporate treasurer held personally liable for debt of corporation because of his fraudulent misrepresentation to the creditor).

Finally, the appellees cite several cases that stand for the more general principle that a corporate officer or director cannot be held liable for the bad acts of the corporation in the absence of wrongdoing on the part of the individual officer or director. *Automatic Coin Enterprises, Inc. v. Vend–Tronics, Inc.,* 433 So.2d 766 (La.Ct. App.), *writ ref'd,* 440 So.2d 756 (La.1983) (officers of a corporation are not personally liable for the allegedly tortious acts of the corporation in the absence of fraud, misfeasance or other wrongdoing on the part of the officers individually); *McPhail v. Louisiana Farm Bureau Rice, Inc.,* 419 So.2d 977 (La.Ct.App.), *writ ref'd,* 421 So.2d 908 (La.1982) (complaint against individual corporate directors for breach of employment contract dismissed because of the absence of allegations against the individual directors sufficient to constitute legal fraud); *Gray v. Preferred Properties, Inc.,* 343 So.2d 1087 (La.Ct.App.1976) (corporate president held personally liable for damages resulting from a real estate sale because evidence showed fraud on his part).

We do not take issue with the holdings in these groups of cases involving efforts by creditors of Louisiana corporations to hold the directors and officers of those corporations liable for the debts or acts of the corporations, nor is our holding here inconsistent with them. In the case before us, no effort is made to hold the directors of LWE liable for a debt or action of the corporation. Rather, the Committee, acting in the name and on behalf of LWE, seeks to hold the LWE directors liable *to the corporation* for their *own* acts (or failures to act).

As summarized above, Louisiana law does not authorize a creditor of a corporation to bring a personal action against the corporation's officers and directors for the recovery of damages resulting from their gross negligence, mismanagement or breach of fiduciary duty. LWE's officers and directors are liable only to the corporation itself. Recognizing this fact, the appellees suggest the following argument: Since LWE has no members, any award resulting from successful litigation by LWE of its cause of action against the appellees would redound solely to the benefit of LWE's creditors; consequently, allowing LWE to maintain the instant lawsuit is tantamount to allowing LWE's credi-

tors to achieve indirectly what they could not achieve directly—a personal action to recover losses for corporate mismanagement. We are unable to embrace the appellees' argument, however, for it would eviscerate the Louisiana statute governing the fiduciary duties of officers and directors of a nonprofit corporation.

Under Louisiana law, a nonprofit corporation is not required to have any members, *see e.g.* La.Rev.Stat.Ann. § 12:217 (West 1969), and LWE does not, in fact, have any members. Therefore, under section 12:226(A), any cause of action for negligent management of LWE belongs solely to the corporation. The appellees' position, however, would preclude LWE from maintaining the action since the benefits from successful litigation would ultimately flow to LWE's creditors, who could not themselves maintain an action for gross negligence, mismanagement or breach of fiduciary duty against LWE's officers and directors. The result of the appellees' argument, therefore, would be to read the words "to the corporation" out of section 12:226(A) in this situation—a reading completely at odds with the general rule that a court charged with interpreting a statute must endeavor to adopt a construction which gives meaning to all the words of the statute. *See Crown Zellerbach Corp. v. Heck*, 407 So.2d 770, 774 (La.Ct.App.1981); *Hibernia Nat'l Bank v. Louisiana Tax Comm'n*, 195 La. 43, 196 So. 15, 18 (1940). As the Louisiana Supreme Court has stated, "[t]he assumption is that all parts of a statute—each word, each phrase, each clause—were intended by the legislature to have some meaning; none was inserted by mere inadvertence. Furthermore, all of the statutory provisions are to be given effect wherever possible." *State v. Texas Co.*, 205 La. 417, 17 So.2d 569, 573 (1944); *see also Louisiana Television Broadcasting Corp. v. Total C.A.T.V.*, 341 So.2d 1183 (La.Ct.App.1976), *writ ref'd*, 343 So.2d 1076 (La.1977). The appellees' argument would force us to disregard this cardinal rule of statutory construction.

The appellees' position would equally absurd consequences under the Louisiana Business Corporation Law governing for-profit corporations. Under section 12:91, officers and directors owe a duty of care "to the corporation and its shareholders...." If we apply the appellees' argument to the case of an insolvent for-profit corporation, i.e., one whose liabilities exceed its assets, leaving nothing for its shareholders, then a cause of action for gross negligence, mismanagement and breach of fiduciary duty would disappear entirely since the ultimate beneficiaries of any recovery would be the corporation's creditors, who could not themselves maintain the action. The appellees' argument could produce the further anomaly that mismanagement so severe as to render the corporation hopelessly insolvent would shield the officers and directors from liability, whereas mismanagement of a lesser degree, leaving the corporation solvent, would leave the officers and directors exposed to liability. Such a disincentive to good management could scarcely have been intended by the Louisiana legislature when it adopted either section 12:226(A) or section 12:91.

Finally, we note that although the cause of action by the corporation against its officers and directors for gross negligence, mismanagement and breach of fiduciary duty has been a feature of the Louisiana law for decades, as has the principle that corporate creditors may not themselves maintain such an action, there is no Louisiana case holding that where creditors of the corporation are beneficiaries of any recovery by the corporation, the corporation may no longer assert its otherwise viable cause of action. Consequently, we must reject the appellees' argument that Louisiana law precludes an action by a corporation against its officers and directors for gross negligence, mismanagement and breach of fiduciary duty where creditors will be the ultimate beneficiaries of any recovery. To the contrary, Louisiana law, i.e., section 12:226(A) and cases construing its counterpart, section 12:91, and the predecessors of section 12:91, clearly permits the institution *by the corporation* of a suit against its officers and directors for gross negligence, mismanage-

ment and breach of fiduciary duty even if the ultimate beneficiaries of any recovery are the corporation's creditors.

### 3. *The Receivership Analogy*

■ In arguing that Louisiana law provides no remedy to the creditors here, and therefore, any lawsuit which ultimately benefits *only* the creditors is barred, the appellees overlook the receivership provisions of Louisiana Nonprofit Corporation Law, La.Rev.Stat.Ann. §§ 12:258–12:259 (West 1969), which would provide the creditors of an insolvent Louisiana corporation with a remedy from the directors and officers of that corporation for gross negligence, mismanagement and breach of fiduciary duty. Under section 12:258(A)(1), a creditor may institute a proceeding against a corporation for the appointment of a receiver, and the court will make the appointment if there is a showing "that the directors or officers of the corporation are jeopardizing the rights of its members or creditors by grossly mismanaging the corporation." Our analysis here is properly guided by cases construing the meaning of the analogous provisions of Louisiana Business Corporation Law, La.Rev.Stat.Ann. §§ 12:151–12:152 (West 1969), just as we looked to cases construing the Business Corporation Law in our discussion of the duties of directors and officers to the corporation.[7] This court has characterized the Louisiana receivership provisions as a recognition of "the inadequacies of the relief afforded at law to stockholders and creditors of a corporation" and an "attempt to give them adequate relief where the corporate business is grossly mismanaged." *Kohler v. McClellan*, 156 F.2d 908, 912 (5th Cir.), *cert. denied*, 392 U.S. 781, 67 S.Ct. 203, 91 L.Ed. 670 (1946). In fact, in a case decided before the Louisiana Business Cor-

poration Law and the Louisiana Nonprofit Corporation Law were adopted, the Louisiana Supreme Court explained the rights and duties of a receiver in circumstances similar to those before us:

> Receivers succeed to all rights of the corporation and may undoubtedly assert all corporate rights against unfaithful officers and directors ... to a certain extent and in certain cases, receivers are also representatives of the creditors, and, like a bankrupt assignee, may, as such representative, impeach and attack transactions of the corporation itself with others to their prejudice. *Raymond v. Palmer*, 35 La.Ann. 276, 278 (La.1883).

Thus, the receivership provisions supply a mechanism through which a creditor may seek relief from the directors of a corporate debtor for breach of fiduciary duty.

The case law makes clear that this remedy is available to an individual creditor, *Kaufman & Enzer Joint Venture v. Bethlan Production Corp.*, 459 So.2d 60, 63 (La.Ct.App.1984), and that the receiver, once appointed, is "empowered to administer the corporation's affairs in a manner designed to safeguard the interests of the corporation's creditors, debtors and stockholders. *Reynaud v. Uncle Sam Planting & Mfg. Co.*, 152 La. 811, 94 So. 405 (1922); *J.B. Beaird Corp. v. Johnson*, 152 So. 789 (La.App.2d Cir.1934)." *Kaufman*, 459 So. 2d at 62. The receiver, then, is a court officer who acts as a trustee on behalf of both creditors and the debtor corporation. *In re Bryce Cash Store*, 12 La.App. 365, 124 So. 544 (1929). Moreover, the Louisiana Supreme Court has even allowed creditors to bring suit on the corporation's behalf against a receiver disabled by a conflict of interest from bringing a suit in the name of the corporation against himself. *Dilzell Engineering & Construction Co.,*

---

7. In the normal case, a creditor concerned by the impact of gross negligence, mismanagement or breach of fiduciary duty on the corporation seeks the appointment of a receiver under section 12:258(A)(1) or under its for-profit analog, section 12:151(A)(1). However, if further investigation reveals the corporation to be hopelessly insolvent, the court will commence dissolution proceedings and the receiver will be replaced by a court-appointed liquidator. *See,* La.Rev.Stat. Ann. § 12:151, Committee Comment—1968 (West 1969). Section 12:259(B) gives liquidators and receivers the same powers, and the case law indicates that both liquidators and receivers are fiduciaries to the corporation, its members (or, if appropriate, shareholders), and its creditors. *In re Bryce Cash Store,* 12 La.App. 365, 124 So. 544 (1929); *Edwins v. Lilly,* 422 So.2d 1217 (La.Ct.App.1982), *writ ref'd,* 426 So. 2d 178 (La.1983).

*Ltd. v. Lehmann,* 120 La. 273, 45 So. 138, 141–42 (1907).

If the individual creditor is successful in obtaining a receiver, the receivership will benefit all of the creditors equally, *Uncle Sam Planting & Mfg. Co. v. Reynaud,* 157 La. 955, 103 So. 276, 277 (1925) ("a receivership inures to the benefit of all creditors alike and gives no preference to plaintiff [i.e., the party seeking the receivership]"). In the case before us, the fact that the creditors are suing not for themselves, but on behalf of the corporation, ensures an identical outcome. That is, any proceeds of this suit against the directors will go to the debtor-in-possession to be distributed *pro rata* among the creditors of the bankrupt.

Further, the appointment of a receiver, at least in the case of an insolvent corporation, is a remedy available to creditors in the absence of fraud. The language of the statute allows for the appointment of a receiver upon a showing that "directors or officers ... are ... grossly mismanaging the corporation." La.Rev.Stat.Ann. 12:258(A)(1) (West 1969). The Louisiana Supreme Court, in *In re Receivership of Webre–Steib, Co., Ltd.,* 136 La. 272, 67 So. 1 (1914), interpreted the identical language in the predecessor statute to section 12:151, saying "whether the gross mismanagement, ultra vires acts, wasting, misusing, or misapplying of funds, or violation of charter rights specified in the statute are done purposely and fraudulently, or negligently and inefficiently; the result is the same—the innocent stockholder, or creditor, is the sufferer—and the intent of the law is to protect him from inefficiency and negligence." 67 So. at 3. In *Kinnebrew v. Louisiana Ice Co.,* the supreme court, applying the predecessor statute, carefully reviewed the financial condition of the corporation before refusing to appoint a receiver on grounds of mismanagement. The court held that "the rights and interests of plaintiffs were not being jeopardized and put in imminent danger as the result of gross mismanagement of the ... directors." *Kinnebrew v. Louisiana Ice Co, Inc.,* 216 La. 472, 43 So.2d 798, 801 (1949). That is, in the absence of allegations of fraud, the court carefully reviewed evidence of gross mismanagement, finding it insufficient given the relative financial health of the company.[8]

■ To summarize, the creditors of LWE would have had a remedy under Louisiana law from the directors and officers of LWE for gross negligence, mismanagement and breach of fiduciary duty. While they could not have brought such a suit against the directors and officers directly, they could have sued for the appointment of a receiver. Once appointed, the receiver would be in the position to sue the directors on behalf of the corporation. The fact that the proceeds of such a suit would ultimately end up in the hands of creditors would be of no significance under the Louisiana case law to the validity of the receiver's action. That is, there is no bar in Louisiana law to actions brought by or in the name of a corporation against the directors and officers of the corporation which benefit only the creditors of the corporation; indeed, the Louisiana law specifically rec-

---

**8.** We recognize that Louisiana law does limit the discretion of the court to appoint a receiver to take over control of a healthy, solvent corporation at the behest of a minority shareholder. In *Peiser,* the court refused to appoint a receiver for a clearly solvent company without a showing that the necessity for a receiver was "manifest" and that "such action would serve a useful purpose." *Peiser,* 60 So.2d at 4. *See also, Allen v. Royale 16, Inc.,* 449 So.2d 1365 (La.Ct.App. 1984) (Absent a showing by plaintiff that the corporation was insolvent or that the defendants intended to dissipate its assets, the court refused to appoint a receiver to take over the affairs of an on-going concern.) *Fincher v. Claiborne Butane Co.,* 349 So.2d 1014, 1017 (La.Ct. App.1977) (Request by minority shareholders for the appointment of a receiver denied because allegations of mismanagement, in the absence of a showing of fraud or insolvency, were insufficient to make the need for a receiver manifest.); *and see* the discussion of *Farwell, supra,* section C.(1). These cases are readily distinguishable because they all involve companies for which there was no threat of insolvency. The courts are reluctant to appoint a receiver on grounds of gross mismanagement where the alleged mismanagement has not resulted in serious financial damage to the corporation. In the case before us, on the other hand, LWE's financial condition is far from healthy, and the reluctance reflected in these cases would not be a factor here.

ognizes such actions. The appellees' arguments to the contrary are simply wrong.

### D. Other Statutory Provisions

■ The appellees also argue that some of the appellees are shielded from liability here by virtue of La.Rev.Stat.Ann. § 9:2792.1 (West Supp.1988), which provides:

A person who serves as a director, officer, or trustee of a nonprofit organization qualified as a tax-exempt organization under Section 501(c) of the Internal Revenue Code of 1954, as amended, and who is not compensated for such services on a salary basis shall not be individually liable for any act or omission resulting in damage or injury, arising out of the exercise of his judgment in the formation and implementation of policy while acting as a director, officer or trustee of that organization, or arising out of the management of the affairs of that organization, provided he was acting in good faith and within the scope of his official functions and duties, unless the damage or injury was caused by his willfull or wanton misconduct.

We cannot accept the appellees' argument that this provision shields some of the appellees from liability, however, because we find that section 9:2792.1 was adopted after this case began and was not intended to apply retroactively.[9]

The provision in question was adopted in 1987 while this lawsuit was initiated in 1985. In Louisiana, "[a] law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts." La.Civ.Code Ann. art. 8 (West 1952). Moreover, "[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated." La.Rev. Stat.Ann. § 1:2 (West 1987). While acknowledging these clear expressions of the Louisiana legislature's general policy disfavoring retroactive application, the appellees argue that section 9:2792.1 fits within one of the generally recognized exceptions to that policy. In *Cahn v. Cahn*, the Louisiana Supreme Court recognized four exceptions to the general rule that laws will not be applied retroactively: (1) where the legislature expressly states that the law is retroactive; (2) where the law is "interpretive"; (3) where it is a penal law which suppresses or lessens a penalty; and (4) where the law is procedural, remedial or curative in nature. 468 So.2d 1176, 1181 (La.1985); *see also Ardoin v. Hartford Acc. & Indem. Co.*, 360 So.2d 1331, 1338 (La.1978); *Peppard v. Hilton Hotels Corp.*, 482 So.2d 639, 639–40 (La.Ct.App. 1986).[10]

The appellees argue that section 9:2792.1 may be applied retroactively because it is merely interpretive, codifying existing case law rather than modifying or abridging any preexisting cause of action. The interpre-

---

**9.** We also recognize the existence of the following statutory provision:

A person who serves as a director, officer, or trustee of any nonprofit organization, including but not limited to an organization which sponsors a fair or festival, or any nonprofit historical organization, which is organized for civic or historical purposes, whether he serves with or without compensation for such services shall not be individually liable for any act or omission resulting in damage or injury arising out of the exercise of his judgment in the formation and implementation of policy while acting as a director, officer, or trustee of that organization, or arising out of the management of the affairs of that organization, provided he was acting in good faith and within the scope of his official functions and duties, unless such damage or injury was caused by his willful or wanton misconduct.

La.Rev.Stat.Ann. § 9:2792.3 (West Supp. 1988). As this provision was also adopted well after the instigation of the Committee's lawsuit, however, it is inapplicable here for the same reasons as will be discussed with regard to section 9:2792.-1.

**10.** In 1987, the Louisiana legislature amended Article 8 of the Civil Code and enacted the following provision:

In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary. La.Civ.Code Ann. Art. 6 (West Supp. 1988). The Official Comments to Article 6 specify that while this article is new, it is in accord with Louisiana jurisprudence interpreting old Article 8 and does not change the law in this area.

tive exception has been explained as follows:

> The exception ... is justified on the ground that these laws do not establish new rules; they merely determine the meaning of existing laws and may thus be applied to facts occurring prior to their promulgation. In these circumstances, there is an apparent rather than real retroactivity, because it is the original rather than the interpretive law that establishes rights and duties.

*Ardoin*, 360 So.2d at 1338 (quoting A. Yiannopoulos, *Civil Law System* 68 (1977)); *see also Peppard*, 482 So.2d at 639. "The interpretive legislation does not create new rules, but merely establishes the meaning that the interpreted statute had from the time of its enactment." *Ardoin*, 360 So.2d at 1339. As is clear from our earlier discussion of the liability of officers and directors to the corporation for misconduct grounded in the demesnes of negligence, section 9:2792.1's limitation of liability to willfull and wanton misconduct clearly works a change on existing law. As a result, we do not agree with the appellees that section 9:2792.1 is interpretive and may be applied retroactively.[11]

We now turn to the bankruptcy implications of this case in order to determine whether the Committee is entitled to maintain the action on LWE's behalf.

### III.

### BANKRUPTCY PERSPECTIVE

#### A. Property of the Estate

The filing of a petition for reorganization under Chapter 11 of the Code creates an estate. 11 U.S.C. § 541(a). That estate is comprised of all the property listed under section 541, wherever located and by whomever held, including "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* The scope of the term "property of the estate" is very broad. *United States v. Whiting Pools*, 462 U.S. 198, 205–06, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir.1987). Section 541(a)(1)'s reference to "all legal or equitable interests of the debtor in property" includes causes of action belonging to the debtor at the time the case is commenced. *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1149 (5th Cir.1987); *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1274 (5th Cir. 1983); *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222, 1225 (8th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987) (citing 4 Collier on Bankruptcy § 541.10[1], at 541–62 (15th ed. 1986)). LWE's cause of action against its officers and directors, therefore, is "property of the estate."

#### B. Duties of the Debtor–in–Possession

■ Until a corporation which is in Chapter 11 can be reorganized or liquidated pursuant to a plan under 11 U.S.C. §§ 1121–29, a trustee or the debtor-in-possession is authorized to manage the property of the estate. *See* 11 U.S.C. § 1108. Here, LWE was continued as the debtor-in-possession. *See* 11 U.S.C. § 1101. With certain exceptions not relevant here, a debtor-in-possession performs the same functions as a trustee in a reorganization. *See* 11 U.S.C. § 1107(a); *Whiting Pools*, 462 U.S. at 200 n. 3, 103 S.Ct. at 2311 n. 3;

---

11. The appellees also attempt to find succor in La.Rev.Stat.Ann. § 9:2792 (West Supp.1988) which provides:

> A person serving with or without compensation as a member, director, trustee or officer of any public, charitable or nonprofit hospital, institution or organization shall not be individually liable to any person, firm or entity, public or private, receiving benefits from the hospital, institution or organization for any act or omission to act by any employee or other officer of such public, charitable or nonprofit hospital, institution or organization.

Once again, the appellees have sought shelter in a statutory provision not meant to cover the instant case. The Committee argues that this provision was intended to cover only hospitals and health-related nonprofit organizations. Without expressing any opinion on that contention, we conclude that section 9:2792 was not intended to shield the officers and directors of a nonprofit corporation from suit *by* the corporation itself. By its terms, section 9:2792 merely applies to suits by third parties and, therefore, is inapposite to the case at bar.

*In re Hughes*, 704 F.2d 820, 822 (5th Cir. 1983). The debtor-in-possession, therefore, "both enjoys the rights and must fulfill the duties of a trustee." *In re Hughes*, 704 F.2d at 822; *see also Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962, 966 (5th Cir.1983). As one of its duties, a trustee is not only entitled to but *must* collect the property of the estate. 11 U.S.C. § 704(1).[12] Moreover, as the Supreme Court has held, "the trustee is 'accountable for all property received,' [11 U.S.C.] §§ 704(2), 1106(a)(1), *and has the duty to maximize the value of the estate,* see [11 U.S.C.] § 704(1)." *Commodity Futures Trading Comm'n. v. Weintraub*, 471 U.S. 343, 352, 105 S.Ct. 1986, 1992, 85 L.Ed. 2d 372 (1985) (emphasis added). Since LWE's cause of action was property of the estate, the debtor-in-possession was duty bound to assert it if doing so would maximize the value of the estate.

It is clear that a trustee—and, therefore, a debtor-in-possession—has the authority to bring an action for damages on behalf of a debtor corporation against corporate principals for gross negligence, mismanagement or breach of fiduciary duty where such an action could have been asserted by the debtor corporation, or by its stockholders in a derivative action, prior to bankruptcy. *See Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 428–29, 92 S.Ct. 1678, 1685–86, 32 L.Ed.2d 195 (1972); *Pepper v. Litton*, 308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939) (interpreting section 70(a)(6) of the old Bankruptcy Act, a predecessor of sections 541(a)(1) and 704(1) of the Code) ("While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee.") (footnotes omitted); *Dal-las Cabana, Inc. v. Hyatt Corp.*, 441 F.2d 865, 868 (5th Cir.1971) (it is the trustee's right to prosecute all causes of action which could have been prosecuted by the bankrupt or debtor had bankruptcy not intervened); *Hooper v. Mountain States Sec. Corp.*, 282 F.2d 195, 206–07 (5th Cir. 1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961); *In re Ozark*, 816 F.2d at 1225; *Rochelle v. Marine Midland Grace Trust Co.*, 535 F.2d 523, 527 (9th Cir.1976) (reorganization trustee had standing to assert securities law claims on behalf of debtor corporation against corporation's officers and directors); *Gochenour v. Cleveland Terminals Bldg. Co.*, 118 F.2d 89, 93 (6th Cir.1941) (corporation's right of action to recover damages because of corporate officer's misconduct and neglect of duty passes to trustee in bankruptcy); 4 Collier, Collier on Bankruptcy ¶ 541.10 (15th ed. 1986) ("The estate created pursuant to § 541 succeeds to any right of action the debtor corporation may have to recover damages for misconduct, mismanagement, or neglect of duty by a corporate officer or director.").

In the instant case, once LWE filed a petition for Chapter 11 relief, its cause of action against the appellees—which was property of the estate—passed to the debtor-in-possession as representative of the estate. Since the cause of action belonged to LWE, the debtor-in-possession had the authority to pursue it in bankruptcy proceedings. *See In re Ozark*, 816 F.2d at 1225. Moreover, under section 704(1) of the Code, the debtor-in-possession was required to pursue the cause of action if it would be beneficial to the estate to do so. Due to a conflict of interest on the part of its officers and directors, however, the debtor-in-possession, in effect, refused to assert the cause of action. As a result, the Commit-

---

12. Section 1107 of the Code provides:
    (a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under § 330 of this title, and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter.

Section 704 of the Code lists a number of specific duties required of a trustee—and, by implication, a debtor-in-possession. Among those is the duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest...." 11 U.S.C. § 704(1).

tee sought to bring the action on the corporation's behalf. Our discussion must now turn, therefore, to whether the Committee has the authority to pursue the matter on the debtor-in-possession's behalf.

## C. Standing of Creditors' Committees

The law is well-settled that in some circumstances, a creditors' committee has standing under Title 11, United States Code, section 1103(c)(5) and/or section 1109(b) [13] to file suit on behalf of a debtor-in-possession or a trustee. *See In re Louisiana World Exposition*, 832 F.2d at 1397; *Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351, 1363 (5th Cir.1986) (suggesting that section 1109(b) provides a basis for the standing of a creditors' committee); *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1287 (5th Cir.1985) (expressing approval of bankruptcy cases such as *In re Toledo Equipment Co.*, 35 B.R. 315 (Bankr.N.D.Ohio 1983), and *In re Joyanna Holitogs, Inc.*, 21 B.R. 323 (Bankr.S.D.N.Y.1982), which have conceded that a creditors' committee may sue in certain situations); *In re Nicolet, Inc.*, 80 B.R. 733 (Bankr.E.D.Pa.1987); *see also In re MortgageAmerica*, 831 F.2d 97, 98 (5th Cir.1987) (creditors' committee may, in some circumstances, have the right to initiate an avoidance action); *In re STN Enterprises*, 779 F.2d 901, 904 (2d Cir.1985) ("We agree with these bankruptcy courts that 11 U.S.C. § 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate suit with the approval of the bankruptcy court.").

While the circumstances under which a creditors' committee may sue are not explicitly spelled out in the Code, the bankruptcy courts have generally required that the claim be colorable, that the debtor-in-possession have refused unjustifiably to pursue the claim, and that 'the committee first receive leave to sue from the bankruptcy court. *In re Louisiana World Exposition*, 832 F.2d at 1397 (citing cases).[14] "We agree that these are relevant considerations, though not necessarily a formalistic checklist." *Id.* Here, as discussed earlier in this opinion, the Committee is pursuing a colorable claim. The Committee asked LWE to bring the action; LWE in effect refused, apparently being unable to act due to the conflict of interest presented to its decision makers. *See id.* Finally, the bankruptcy court granted the Committee's request to bring suit on behalf of LWE. Under the circumstances, we can find no fault with the Committee's authority to bring this lawsuit.[15] We must address in

---

**13.** Section 1103(c) provides:

> (c) A committee appointed under section 1102 of this title may—
> (5) perform such other services as are in the interest of those represented.

Section 1109(b) provides:

> (b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

**14.** The bankruptcy courts have repeatedly and consistently looked to some or all of these factors in determining whether a creditors' committee is authorized to initiate an adversary proceeding. *See, e.g., In re Monument Record Corp.*, 71 B.R. 853, 863 (Bankr.M.D.Tenn.1987); *In re Nicolet*, 80 B.R. at 738–39; *In re Curry & Sorensen, Inc.*, 57 B.R. 824, 838 (9th Cir. BAP 1986); *In re Evergreen Valley Resort*, 27 B.R. 75, 76 (Bankr.D.Maine 1983); *In re Chemical Separations Corp.*, 32 B.R. 816, 819 (Bankr.E.D.Tenn. 1983); *In re Parrot Packing Co.*, 42 B.R. 323, 329–30 (N.D.Ind.1983); *In re Monsour Medical Center*, 5 B.R. 715, 717–18 (Bankr.W.D.Penn. 1980). This list is by no means exhaustive.

**15.** The appellees suggest that the district court dismissed the Committee's action because the bankruptcy court's authorization to file suit was procedurally flawed. The appellees contend that "[I]n dismissing the LWE/Creditors suit the District Court, of course, recognized that Judge Kingsmill's order was not made upon any evidentiary hearing and there was no ruling by that court on the issue of standing." They cite *In re Wesco Prod. Co.*, 22 B.R. 107 (N.D.Ill.1982), in support of their proposition. The appellees have completely mischaracterized the rulings of both the bankruptcy court and the district court in this case. Consequently, we are by no means persuaded that the district court either based its ruling on or indeed even acknowledged the existence of the alleged procedural flaws in the bankruptcy court authorization.

First, we note that an evidentiary hearing was unnecessary under the circumstances. The Committee outlined its cause of action in its application to the bankruptcy court and in its demand letter to LWE management. In the demand letter, the Committee explicitly referred to potential damage recoveries for specific acts of mismanagement. The Committee also included a proposed attorney's contingency fee

*greater detail, however, the appellees' argument that LWE's refusal to bring the lawsuit was not unjustified.*

## D. Unjustified Refusal

While conceding, as they must, that a creditors' committee has a qualified right to sue on behalf of a debtor-in-possession or a trustee, the appellees argue that the Committee lacks standing to maintain this

schedule for the bankruptcy court to evaluate in determining the wisdom of allowing the Committee to initiate suit on behalf of LWE. LWE's officers and directors did not object at any time to the Committee's application. On the contrary, their counsel stated that LWE's management "[had] no objection that the creditors' committees [sic] proceed." Counsel went on to stress that the debtor-in-possession did not *refuse* to bring suit; rather, the debtor-in-possession was unable to sue because of the conflict of interest presented to LWE's officers and directors (they were all potential defendants). In short, the Committee demonstrated the existence of a potential cause of action, a demand on the debtor-in-possession, a refusal or inability on the part of the debtor-in-possession to bring suit, the possibility of a sizeable monetary recovery and, given the contingent nature of the attorney's fee schedule, a limited cost factor. The LWE officers and directors neither refuted any of the Committee's claims nor objected to them. Under the circumstances, we are at a loss to understand just what could have been gained from an evidentiary hearing on an application which drew no objections.

Second, we disagree with the appellees' assertion that the bankruptcy court did not address the question of standing. At the hearing on the Committee's application, the Committee's counsel made the following statements:

MR DRAPER: I have received no objection to the notice and the motion that were filed in connection with the authority to file the suit and the matters asserted in it.

I'd like to call to the Court's attention a case which grants to a creditors' committee the right to file a suit in the name of the debtor and on behalf of the debtor where the debtor had not taken the action or will not take the action. And the case I'd like to cite to the Court is *in Re Joanna Holicod* (phonetic) is claiming bankruptcy, *Reporter 223,* and I think that a quote from the case is very appropriate. And the statutory authority they're talking about is 1103 and 1109(b). And it really says, "The general right to be heard would be an empty grant unless those who have such right are also given the right to do something when those who should will not."

In short, the right to be heard given the creditors' committee includes the right to sue where a trustee for a debtor-in-possession will not. *That standing to sue means that the*

action because the debtor-in-possession did not *unjustifiably* refuse to pursue it. We are able to discern what are, in essence, three distinct yet related arguments.

### 1. *Impairment of Rights*

As an initial matter, the appellees maintain that the debtor-in-possession's refusal to initiate this lawsuit was not unjustified

*committee is plaintiff on behalf of the debtor and in the debtor's name, and it's that authority that we're asking the Court to grant in the motion.* (emphasis added).

The bankruptcy court ultimately ruled that "it's in the interest of justice and in the best of the creditors of the case that all avenues be explored and if necessary litigate it. I'll authorize the creditors' committee to proceed." The bankruptcy court was aware that the Committee sought standing to litigate on behalf of the debtor-in-possession and ruled that the Committee could exercise that authority.

Finally, we find *no* indication that the district court ever acknowledged or based its ruling on either the absence of an evidentiary hearing below or the bankruptcy court's alleged failure to rule on the standing issue—arguments which were not even raised in the appellees' motion to dismiss. In fact, at the hearing on the motion to dismiss, the district court stated:

THE COURT: The order that was entered by Judge Kingsmill, which basically, I suppose, formed the cornerstone or basis of these proceedings, is, as far as the Court is concerned, here in order, in that certainly it is within the purview of that Court, and that distinguished Judge, to enter such an order as he deemed appropriate in the circumstances at the time of the entry of the order. The legal issue that I perceive is before this Court now doesn't necessarily take issue with the correctness of the entry of that order by Judge Kingsmill, but takes issue with the contentions that there is a right of action couched in the terms and against the parties that plaintiff seeks to make defendant in these proceedings. It seems to me that that is the sole issue that this Court is empowered to address, that it would be really an impropriety on the part of the Court to do anything other than address the legal issue that is clearly existent here.

As the district court made abundantly clear in its comments at the hearing on the Committee's motion for rehearing, its decision to grant the appellees' motion to dismiss was based solely on its belief that where individual creditors of an insolvent corporation are precluded by state law from maintaining an action for negligence against corporate officers and directors, a creditors' committee may not utilize federal bankruptcy procedures to avoid those state law barriers to recovery.

because the creditors' interests—as opposed to the *debtor's* interests—were not impaired by that refusal. Relying on *Coral Petroleum* and *Fuel Oil Supply,* the appellees argue that there was no unjustified refusal here because Louisiana law precludes injured creditors of an insolvent corporation from bringing the suit themselves. The appellees contend that "[t]he interests and rights of LWE creditors are not impaired by the refusal to grant them a right of action that they are not entitled to under substantive State law." Therefore, they conclude, the Committee has no right to maintain the instant action.

In *Fuel Oil Supply,* we had occasion to address the intervention rights of a creditors' committee. In that case, we held that section 1109(b) of the Code does not create an automatic right to intervention; rather, it places intervention under the Code on the same footing as Federal Rule of Civil Procedure 24(a)(2), which permits intervention when a party with an interest in the proceeding would have its rights impaired if it were not allowed to intervene and those rights are not protected by the parties in the suit. *Coral Petroleum,* 797 F.2d at 1363; *Fuel Oil Supply,* 762 F.2d at 1285–87. We expressly stated in *Fuel Oil Supply* that bankruptcy cases concerning a creditors' committee's right to intervene are analogous to cases concerning its right to initiate adversary proceedings. *Fuel Oil Supply,* 762 F.2d at 1287; *see also Coral Petroleum,* 797 F.2d at 1363. In both *Fuel Oil Supply* and *Coral Petroleum,* we noted that the creditors' committee's right to initiate adversary proceedings depends on whether the trustee or the debtor-in-possession has failed to act to protect the creditors' interests. *Id.*

It is at this point in the analysis, however, that we must part ways with the appellees. The appellees assert that *Fuel Oil Supply* and *Coral Petroleum* bar the Committee's suit here. They assert that the creditors' rights are fully protected if the debtor-in-possession only asserts those causes of action which *creditors* could have maintained prior to bankruptcy.[16] Neither case stands for that proposition, however, and the appellees' reliance on them is misplaced. A creditor's interests in a Chapter 11 context are *not* protected where the debtor-in-possession fails to fulfill its obligation to collect property of the estate. If a valid—and potentially profitable—cause of action exists under state law which the debtor-in-possession may assert on behalf of the corporation, *all* creditors are harmed when the debtor-in-possession refuses to pursue it. The value of the estate is not maximized and the ultimate recovery of all creditors is diminished. As we noted in *Coral Petroleum:*

> Here, Coral refused to sue, yet the Committee desired to bring an action. If a preference were to exist, then under section 547 the unsecured creditors' interests (which the Committee represents) are not protected. *See 5 Collier, supra,* § 1109.–0213) (a general right to be heard would be an empty grant unless those who had such rights were allowed to act when those who should act did not).

797 F.2d at 1363.

The appellees' argument seems premised on the bizarre notion that a debtor-in-possession is under no obligation to act in the best interests of the creditors. The appellees' position "ignores the fact that bankruptcy causes fundamental changes in the nature of corporate relationships." *See Weintraub,* 471 U.S. at 355, 105 S.Ct. at 1994. As the Court noted in *Weintraub:*

> Respondents also ignore that if a debtor remains in possession—that is, if a trustee is not appointed—the debtor's directors bear essentially the same fiduci-

---

**16.** To the extent that the appellees argue that a debtor-in-possession need assert only those causes of action or rights which run *solely* in favor of the creditors, they are clearly in error. Such an argument would be nonsensical for where state law provides that a right of action belongs solely to the corporate creditors rather than to the corporation itself, it is axiomatic that the claim does not become property of the estate under section 541(a) of the Code, nor is it enforceable by a trustee or a debtor-in-possession under section 704(1) of the Code. *See Hooper,* 282 F.2d at 206–07; *In re Ozark,* 816 F.2d at 1225; *Rochelle,* 535 F.2d at 527; *see also Caplin,* 406 U.S. at 428–31, 92 S.Ct. at 1685–87; *In re S.I. Acquisition,* 817 F.2d at 1153.

ary obligation to creditors and shareholders as would the trustee for a debtor out of possession. *Wolf v. Weinstein,* 372 U.S. 633, 649–652 [83 S.Ct. 969, 979–981, 10 L.Ed.2d 33] (1963). Indeed, the willingness of courts to leave debtors-in-possession "is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee." *Id.,* at 651 [83 S.Ct. at 980].

471 U.S. at 355, 105 S.Ct. at 1994; *see also In re Hughes,* 704 F.2d at 822 (debtor-in-possession holds its powers in trust for the benefit of creditors; creditors have the right to require the debtor-in-possession to exercise those powers for their benefit); *Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 462 n. 8 (6th Cir.1982) ("A trustee in bankruptcy or a debtor-in-possession, as a fiduciary, represents both the secured and unsecured creditors of the debtor."). Here, the debtor-in-possession effectively could not act to maximize the value of the estate. As a result, the creditors' interests were not protected. Far from barring the Committee's action, as the appellees assert, *Coral Petroleum* and *Fuel Oil Supply* command this action to go forward.[17]

### 2. *Beneficiaries of the Lawsuit*

The appellees argue that the debtor-in-possession's refusal to initiate this lawsuit was not unjustified because only the creditors represented by the Committee would benefit from it; in effect, the appellees have reframed their earlier argument that the Committee is merely attempting to recover the debts of the corporation from LWE's officers and directors. The appellees complain that "[a]lthough the Creditors' Committee disingeniously asserts that it filed the instant action on behalf of the LWE, defendants herein submit that various LWE creditors represented by the Creditors' Committee are the only persons who would benefit from any recovery in this action." They also note that the Committee "has unabashedly characterized this lawsuit as a 'quest to get money for the creditors of the Debtor.'" While we are uncertain as to why such a quest would be either unlawful or immoral, we most assuredly reject their proposition that this lawsuit will only benefit the Committee.

There can be no serious dispute that the Committee and its member creditors are not the only creditors with a conceivable interest in seeing the value of the estate maximized. The appellees have admitted that there are other interested parties with a pecuniary interest in the estate. These include: lending institutions which have extended funds to LWE; corporate sponsors/guarantors; city, state and federal tax authorities; and creditors holding priority claims arising from the operation of the business as well as for professional fees arising in a Chapter 11 case. *See, e.g.,* 11 U.S.C. §§ 504, 507, 1129. In addition, we must disagree with the appellees' intimation that any recovery will flow directly to the Committee. As the Committee has noted, "if there is any money that is produced as a result of this lawsuit it will go not to the creditors who are represented by the Creditors' Committee but to LWE itself which will distribute those funds in accordance with the usual bankruptcy principles and after a plan of reorganization has been filed."

Insofar as the appellees argue that we should adopt as a matter of law the peculiar proposition that a debtor-in-possession need never pursue property of the estate which will ultimately go only to satisfy the claims of creditors, their argument deserves short shrift. In the vast majority of

---

**17.** The appellees, relying on language from the Second Circuit's opinion in *In re STN,* 779 F.2d 901 (2d Cir.1985), argue that a debtor-in-possession's refusal to maintain the debtor corporation's state law cause of action against the corporation's officers and directors is not unjustified where state law "precludes suit by injured creditors of an insolvent corporation." *In re STN,* 779 F.2d at 905. Even if we were to adopt the appellees' interpretation of *In re STN,* an issue not before us, it would not benefit the appellees in this case because, as our analysis of Louisiana law set forth in sections II. C.(2) and C.(3), *supra,* indicates, the creditors of LWE would have an effective mechanism under Louisiana law for recovering, in the name of LWE, from the directors and officers of LWE, the damages occasioned by any gross negligence, mismanagement, or breach of fiduciary duty.

reorganization cases, the debtor corporation is insolvent and, upon confirmation of a plan of reorganization or liquidation, equity holders will receive nothing. In almost every case, all of the property of the estate will ultimately go to the creditors. Indeed, in an analogous situation, the Supreme Court recognized that:

> One of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors. In cases in which it is clear that the estate is not large enough to cover any shareholder claims, the trustee's exercise of the corporation's attorney-client privilege will benefit only creditors, but there is nothing anomalous in this result; rather, it is in keeping with the hierarchy of interests created by the bankruptcy laws. See generally 11 U.S.C. § 726(a).

*Weintraub,* 471 U.S. at 355, 105 S.Ct. at 1994. The appellees' argument would free Chapter 11 trustees and debtors-in-possession from their express duty to collect the property of the estate whenever the corporation's debts are greater than its assets. That stands the Bankruptcy Code on its head.

Finally, we note that where a debtor-in-possession possesses a cause of action—and, because the estate will benefit as a result, must assert that cause of action—yet is unable, because of a conflict of interest, to bring that action, allowing a creditors' committee to pursue the suit on the debtor-in-possession's behalf will often prove beneficial to the estate. Inherent conflicts in the debtor-in-possession's relationship with its management and creditors may constitute a basis for the appointment of a trustee. It takes but little imagination to discern the benefits of permitting a creditors' committee to proceed in lieu of appointing a trustee for that purpose:

> In cases in which the debtor-in-possession is conducting its affairs without objection but for its failure to prosecute a handful of claims against insiders, granting leave to the creditors' committee to

pursue these actions may be less expensive than the appointment of a trustee and the awarding of his commission ... and it is also less disruptive than conversion of a Chapter 11 proceeding to Chapter 7.

*In re Philadelphia Light Supply Co.,* 39 B.R. 51, 52 (Bankr. E.D.Penn.1984) (citation omitted); *see also In re Nicolet,* 80 B.R. at 739 ("allowing a Committee to maintain an action on behalf of a [debtor-in-possession] is [a] less drastic and hence we believe initially preferable course to that of requiring appointment of a trustee simply to prosecute a meritorious cause of action which the [debtor-in-possession] chooses not to pursue").[18]

### 3. *United States v. Butner*

The appellees maintain that allowing the Committee to pursue LWE's cause of action against its officers and directors for gross negligence, mismanagement and breach of fiduciary duty—in lieu of a trustee or the debtor-in-possession—would give LWE's creditors substantive property rights which they are not entitled to under Louisiana law, in contravention of the United States Supreme Court's opinion in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *Butner* involved a dispute between a bankruptcy trustee and a second mortgagee over the right to rents collected during the period between a mortgagor's bankruptcy and the foreclosure sale of mortgaged property. The Court was forced to determine if a particular question—whether a security interest in property extends to rents and profits derived from the property—should be resolved by reference to state law. Recognizing that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law," *id.* at 54, 99 S.Ct. at 918, the Court refused to adopt a federal rule of equity affording a mortgagee an automatic security interest in the rents even if state law would not recognize any such interest until

---

**18.** Indeed, at oral argument in this case, counsel for the appellees was asked if the appointment of a trustee would be preferable to allowing the Committee to prosecute this action in the event we determined that the action is property of the estate which must be collected. Counsel responded that the appointment of a trustee would not be preferable.

after foreclosure, *id.* at 53–54, 99 S.Ct. at 917–18.

In doing so, the Court clarified the relationship between state property laws and the equity powers of the bankruptcy court. As the Court explained:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a "windfall merely by reason of the happenstance of bankruptcy."

*Id.* at 55, 99 S.Ct. at 918 (quoting *Lewis v. Manufacturers Nat'l Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1960)); *see also In re Waldron,* 65 B.R. 169, 170 (Bankr.N.D.Tex.1986). In *Butner,* therefore, the Supreme Court stressed that federal bankruptcy law should not be used to work a substantive change in the ordering of property interests under state law. The appellees argue that allowing the Committee to maintain this action effectively creates a new cause of action on the part of creditors, thereby working a substantive change in property interests under Louisiana law. We reject that proposition and conclude that *Butner* in no way forbids the committee from maintaining this action in lieu of a trustee or the debtor-in-possession.

Here, it is clear that LWE's cause of action against its officers and directors for gross negligence, mismanagement and breach of fiduciary duty arises under Louisiana law. The named plaintiff, LWE, is the party to whom the action belongs under state law; moreover, any recovery from successful litigation flows directly to that same party. State law property interests are not disturbed—indeed, state property interests *would* be disturbed if we were to accept the appellees' argument—and no substantive interests are created by allowing the Committee to pursue LWE's state law created cause of action. The only change lies in the identity of the agent that actually pursues that state law cause of action on behalf and in the name of LWE. That change is, at most, a procedural device, authorized by the Code, which does not affect state created property interests. To the extent that Louisiana has any interest whatsoever in the identity of the agent who actually asserts LWE's state law rights where LWE is unable to do so, that interest must yield to the procedural needs and dictates of federal bankruptcy law. *Butner* is simply not implicated.

### 4. Conclusion

■ To summarize: LWE's state law cause of action against its officers and directors is clearly property of the estate. It is equally clear that as property of the estate, that cause of action is enforceable by a trustee or, in this case, the debtor-in-possession. Moreover, if pursuing the action would maximize the value of the estate, the debtor-in-possession is obligated to do so. Where the debtor-in-possession is unable or unwilling to fulfill its obligation —due, for instance, to a conflict of interest —the Committee may assert the cause of action on behalf and in the name of LWE if authorized to do so by the bankruptcy court.[19] In light of our analysis, we find

---

**19.** The appellees also claim that the instant lawsuit presents a novel and disturbing extension of a creditors' committee's qualified right to initiate adversary proceedings. The appellees would limit that right to suits seeking to utilize the avoiding powers of the trustee or debtor-in-possession. We have found no support, either logical or precedential, for that limitation. In fact, there are numerous cases in which bankruptcy courts have recognized the viability of other types of suits filed by creditors' committees. *See, e.g., In re Chemical Separations,* 32 B.R. at 817–819 (suit against debtor-in-posses-

sion's insider requesting determination of amount of allowable claim of the insider, an accounting of direct cash benefit attributable to net operating losses insider realized on an income tax statement, and equitable subordination of any allowable claim of the insider); *In re Parrot Packing Co.,* 42 B.R. at 330 (creditors' committee had standing to bring action to reject collective bargaining agreement between union and debtor-in-possession); *In re Evergreen Valley Resort,* 27 B.R. at 76 (action for declaratory judgment as to the ownership of property and the validity of prior claims); *In re Wesco,* 22

that the debtor-in-possession's refusal to pursue LWE's cause of action against its officers and directors for negligent management was indeed unjustified.[20] The Committee outlined a colorable claim which, if pursued successfully, could have greatly increased the value of the estate. While the debtor-in-possession's refusal was understandable given the grave conflict of interest implications, we cannot ignore the fact that the creditors' interests in seeing the property of the estate collected were not protected. Where the interests of an estate and its creditors are impaired by the refusal of a trustee or a debtor-in-possession to initiate adversary proceedings to recover property of the estate, we must consider that refusal unjustified.

## IV.

### MOTION TO DISMISS

As we explained in some detail earlier in this opinion, *see supra* II(A), the Committee's complaint stated a claim against the appellees for gross negligence, mismanagement and breach of fiduciary duty. Moreover, it is clear that Louisiana law does in fact recognize that a corporation may hold its officers and directors liable for gross negligence, mismanagement and breach of fiduciary duty. *See supra* II(B), (C), (D), (E). Finally, we have determined that the Committee may maintain LWE's cause of action in lieu of a trustee or the debtor-in-possession. *See supra* III. Consequently, we must conclude that the district court erred in dismissing the complaint for failure to state a claim upon which relief may be granted.

B.R. at 109 (suit for fraud, breach of fiduciary duty and breach of contract); *Matter of Joyanna Holitogs,* 21 B.R. at 326 (cause of action based upon diversion of corporate opportunities and waste of corporate assets); *see also In re Continental Airlines Corp.,* 59 B.R. 782, 783–86 & n. 8 (Bankr.S.D.Tex.1986) (suit alleging breach of fiduciary duties, breach of implied covenants and negligence on the part of insider officers, directors and parent companies of corporate debtor).

## V.

### SUMMARY JUDGMENT MOTION

Having determined that the district court erroneously granted the appellees' motion to dismiss, we are now asked by the appellees to decide the merits of their summary judgment motion—a motion which the district court refused to rule on in light of its disposition of the appellees' motion to dismiss. The appellees argue that since their summary judgment motion was fully briefed and argued below, we should exercise our discretion to do "what may be just under the circumstances," *see* 28 U.S.C. § 2106, and address the merits of their motion. Whether or not we have the discretion to do as the appellees bid us, we must decline their invitation to do so in the instant case. As we observed in *Isquith v. Middle South Utilities, Inc.,* "[w]e are fundamentally a court of review, not of first analysis...." 847 F.2d 186, 210 (5th Cir. 1988). As in *Isquith,* we have performed our fundamental role here: in order to respond to the parties' arguments, we have reconciled federal bankruptcy law with Louisiana corporate law in a manner which justifies the Committee's pursuit of a colorable cause of action belonging to LWE and, in the process, we have cleared up certain misconceptions concerning a corporation's right, under Louisiana law, to hold its officers and directors liable for various acts of gross negligence, mismanagement and breach of fiduciary duty in the absence of allegations of fraud. In short, we have corrected the district court's mistaken impressions as to the nature and viability of this lawsuit.

"Although we sometimes act beyond our traditional role as a reviewing court and

20. It is clear from reviewing our decisions in *Coral Petroleum* and *Fuel Oil Supply* that in determining whether a debtor-in-possession's refusal was unjustified, we must look to whether the interests of creditors were left unprotected as a result. *See Coral Petroleum,* 797 F.2d at 1363; *Fuel Oil Supply,* 762 F.2d at 1287. As the interests of creditors are imperilled where valid and profitable state law causes of action are neglected by the debtor-in-possession, the unjustified refusal calculus will generally amount to little more than a cost-benefit analysis.

decide issues in the first instance, we cannot justify doing so here." *Id.* at 211. The proper disposition of the appellees' summary judgment motion—which is, in effect, a collection of individual summary judgment motions by ten of the thirteen individual defendant officers and directors—would require us to apply various tenets of Louisiana corporate law to the voluminous facts of this case, an application best left in the first instance to a district court familiar with the law of the state in which it sits. Therefore, we find it appropriate to reverse the district court's judgment and remand to the district court for further development.

## VI.

For the foregoing reasons, the judgment of the district court is REVERSED, and this case is REMANDED to that court for further proceedings consistent with this opinion.